ARCHIE G. BROOKS, BY HIS NEXT FRIEND, ELIZABETH
    BROOKS, PLAINTIFF IN ERROR, V. THE LINCOLN
    STREET RAILWAY COMPANY, DEFENDANT IN
    ERROR.

1.   Street Railway: TRAVEL ALONG PUBLIC HIGHWAY: NEG-
    LIGENCE. It is not negligence *per se* to travel along a public
    highway by the side of a street railway track on which a car is
    moving in the same direction as the party traveling, unless
    such party places himself in such position as to be run over or
    injured by such street car.

2.   ———: DUTIES OF CAR DRIVERS. The driver of a horse car on a
    street railway, in driving horses attached to such car, must sit or
    stand on the front platform or place provided for him, must main-
    tain control of the horses and car, and exercise a reasonable de-
    gree of care and watchfulness to prevent collisions and injury
    to persons crossing or traveling on or over such street.

ERROR to the district court for Lancaster county. Tried
below before CHAPMAN, J.

*J. L. Caldwell* and *I. W. Lansing*, for plaintiff in error,
cited: *Shea v. Portrero and B. V. R. R. Co.*, 44 Cal., 414.
*Hugan v. Eighth Avenue R. R.*, 15 N. Y., 380. *Omaha
Horse Railway Co. v. Doolittle*, 7 Neb., 481. *Barker v.
R. R.*, 4 Daly, 274. *Citizens v. Horse R. R.*, 6 Stewart, 267.

*Edward P. Holmes*, for defendant in error, cited: *Lang-
hoff v. Milwaukee, etc., R. R. Co.*, 23 Wis., 43. *Murdock
v. Finney*, 21 Mo, 138. *Downey v. Hendrie*, 46 Mich.,
498. *Hemmingway v. Poucher*, 98 N. Y., 281. *Kussel v.
Jzevor*, 2 Bradwell, 245.

MAXWELL, J.

This is an action to recover damages sustained by the
plaintiff through the alleged negligence of the defendant.

The plaintiff alleges in his petition, "That plaintiff is

an infant under twenty-one years of age and that this action is brought by his next friend, Elizabeth Brooks, for his benefit; that the defendant on February 19, 1886, was a corporation duly organized under the laws of this state and the owner of a street railroad line with its cars running thereon, and which cars were drawn by horses on and through O street, from Tenth street to Twenty-seventh street, in the city of Lincoln, Lancaster county, Nebraska, and that on said 19th day of February the said plaintiff was traveling on horseback east along said O street, the same being a public highway open and free to all persons to pass and repass at their own free will and pleasure; that at about nine o'clock on the evening of said 19th of February, while plaintiff was thus traveling on said O street, he overtook one of defendant's cars, which was then drawn by horses and in charge of one James Kelley, an agent and servant of defendant; that said car was moving so slowly that the horse on which plaintiff was riding walked by and past defendant's car and horses, and when but a few feet in front of the team attached to said car plaintiff's horse stumbled and fell and plaintiff was thrown to the ground between the tracks or rails of defendant's car line, immediately in front of defendant's horses, without any fault or negligence on his part; that plaintiff uttered a loud outcry and attempted to get up, but was struck by defendant's car and caught by the brakes, machinery, and projections thereof, and was rolled, crushed, and dragged under said car about forty or fifty yards, and was stripped of his clothing, and was run upon and over by defendant's car, bruising and wounding plaintiff's legs, arms, body, and face, and rendering him sick, sore, and lame, and causing him to suffer severe bodily pain and anguish, and leaving him unable to pursue his ordinary work as telegraph operator and linesman, or any work whatever, so that he has been and will be obliged to expend large sums of money, to-wit, two hundred dollars for medical aid and

medicines, nursing, and care, to be relieved of the consequent pain and suffering; that said accident and injuries were caused wholly and solely by the culpable and inexcusable negligence of the defendant, its agents, and servants, in not attempting to stay said car or direct or stop the horses attached to the same or apply the brakes to said car, and in absolutely refusing and neglecting to do any act whatever to avoid or lessen said accident and injuries; that no act on the part of the plaintiff contributed in any degree to produce or cause the said accident and injuries, but the same were caused entirely and only by the negligence of defendant, its agents, and servants."

The defendant, in its answer, in substance denies that the accident happened through fault, negligence, or carelessness on its part, but solely from the recklessness and carelessness of the plaintiff.

The testimony tends to show that the plaintiff was a telegraph operator, the office being at the corner of O and Tenth streets, in the city of Lincoln; that he resided with his mother at the corner of Twenty-fourth and O streets, in said city; that a little before nine o'clock at night on the 19th of February, 1886, he left the telegraph office to go home; that he had a pony which he was accustomed to ride to and from his home, and on the night in question he rode east along O street on the north side of the street railway track; that the street was somewhat rough and the principal travel of teams and wagons passing along said street was on the north side of the track and some three or four feet from the same; the plaintiff, in riding along said street, was on the south side of the usually traveled track and about three or four feet north of the street railway. At about the corner of Twenty-third and O streets the plaintiff overtook the street car going east. He testifies: "I rode by the car, my pony was walking, and the street car horses were walking very slow, hardly moving it looked like to me, and when I had passed them,

I guess about ten feet, my horse stepped into a hole, apparently, and fell south, throwing me on to the track, over onto the street car track; and it seemed to me the horse was not in any hurry getting up and held me there until the street car horses was on each side of me and I couldn't get out, and the car passed over me and mangled me up under the car, and I caught under the car and dragged I guess for fifty or a hundred feet on the hard frozen ground in the middle of the track, and somebody picked me up and took me home or put me in the car."

This testimony is not denied except as to the distance the plaintiff was dragged. The testimony of Kelley, the driver, as to the accident is as follows:

Q. Where were you when you first saw Brooks on the track?

A. I was on the front platform, outside the door. I can tell you how the whole thing was, if I can go on word by word.

Q. Go on word by word and tell how the whole thing was?

A. No. seven passed me on the switch, and after he he got by me I wanted to tell him not to make another trip but to go to the barn, that I had made his trip, for my trip was an extra trip. I leaned around the car, stuck my head around the car after he had got past me quite aways, and I whistled to make him stop. I forgot to tell him when he passed me, and while leaning around there whistling and trying to make him stop I saw a horse and man coming towards me, coming from the west; when I whistled I thought I heard this man that was on horseback whistle and try to make him stop; when I saw that I couldn't make him stop I tied my lines to the front dash, I stepped in the car, closed the door, and fixed a poultice that was on my neck, pulled it up and fixed it; it was on a boil on my neck. I saw the old lady that was on the car look out, when it attracted my attention, and I looked out, and

saw a man going by on horseback. I stepped out on the front platform, turned my back to the north, picked my lines up off the dash, straightened up. Just then I saw this man's pony slip. His pony fell about half way, just stepped to the side and caught itself, and throwed him into the center of the track. That scared my horses and they stopped stone still before I could catch the brake. The car run upon the horses and scared them, and they gave a lunge, and before I could catch the brake the car run upon the horses. There was mud and dirt on the brake shoes. When I had my brake set and throwed all my force on it the mare on the left side kicked and I had to let the brake go. When I got the brake and set it the car was then sliding from the force the horses gave it. It was then in pretty good motion. The mare kicked again and kicked the dash when the car passed over him. I stopped the car as soon as I could. I got off the car to where he was laying in the middle of the track. He wasn't laying, he was on his hands and knees. I asked him what was the matter, and he says for God's sake, Kelley, take me to mother. I asked him where his home was, and he pointed up north-east from where he was, and says up there. By this time Mr. Barrett, the old man that was in the car, and that man that run the second hand store, and a man that lives across the street, I think in a little red house, they were there, they helped me put him on the car and I drove the car up on to the Antelope bridge.

The witness then testifies that he carried the plaintiff to the house of his mother. On cross-examination he said: "I think his mother was the first that came to the door and she says, I think these are the words she repeated, 'Oh, my God, is the boy killed?' I did not knew how bad the boy was hurt, I said to some one there that was going to tell her, don't you tell her; she asked me what was the matter with the boy, or how did he get hurt, and I told her that I did not know. I did not want to tell her the truth because she was so badly excited then."

Q.   Did you have any further conversation with her on that night.

A.   Yes, sir.

Q.   State what it was?

A.   I carried the boy in and put him on the lounge and went down to my car.   I left the car just on the other side of the Antelope, put up my lines, put on the brakes, and I went up to see how the boy was.   His mother was there, and his brother, Charlie Brooks; his mother says to me, "It is all your fault."   I told her that I could not help it.   Charlie Brooks says to me, "If you had have pulled up the lines, stopped the car, it would never have happened."   "Well," I says, "that is all right, Charlie. stopping a car is a great deal different than stopping a wagon; you can stop a wagon by pulling up the lines, but you can't stop a street car that way."   I left the house, went down to the car, drove up to the barn on 10th and A.

Q.   Did you not, on February 19th, 1886, at Mrs. Brooks' house in this city, in the presence of Maggie Brooks, Charlie Brooks, Oscar Chase, and a man named Clussman, say in reply to Mrs. Brooks, "Do you think I did it on purpose?   If I had been out by the brake it would not have happened.   I was inside talking to a man and did not know it," or in substance words like these?

A.   No, I did not.

Q.   State if there is any other thing or fact in relation to this accident that you have not fully explained?

A.   This is all I remember.

An effort was made on behalf of the railway company to have the testimony of Kelley, as to his admissions to Chase and others, stricken out and excluded, which was overruled.

The plaintiff called O. J. Chase, who testified that Kelley, on the night of the injury, said, when interrogated as to the cause of the accident: "I was in the car.   If I had been outside I could have warded this accident off."

In this testimony Chase is corroborated by the mother of the plaintiff, and a brother and sister.

One John H. Barrett was called as a witness by the railway company, who testified in regard to the accident as follows: "After we passed the switch the horses slackened up and the driver just stepped inside of the car and said he had a sore or something troubling him on his neck, and he unfolded a muffler and twisted it about his neck; I noticed he bent forward considerably, and he stood there at the door; all at once he sprang out from the door on to the platform, jumped at the brakes, and almost at that moment there was a jostling and I jumped up and stepped out, and he stepped off and ran around, and I followed him around. I supposed he was off the track. As I followed him around I saw a man' lying on the track a little distance back, and I ran to him and he was groaning badly, and said his legs were both broken, and within a moment or two the driver took hold around his chest and I took hold of his legs and we took him in the car and laid him out on the seat."

There is other testimony in the record to which it is unnecessary to refer.

On the trial of the cause the court instructed the jury as follows: "You are instructed that if the injury complained of was occasioned by the negligence of plaintiff in riding upon or along the side of the railroad track of the defendant, when said horse car of defendant was in motion, and that plaintiff, being thrown upon said track without fault of defendant, was run over unavoidably by defendant, and without fault of defendant and its servants in charge and control of said horse car, then your verdict should be in favor of the defendant, for if the plaintiff contributed to the accident by carelessness or negligence, and was unavoidably injured by defendant and its servants in the ordinary course of defendant's business in running and operating said horse car, then in such case he could not

recover against the defendant." This was excepted to and the giving of the same is now assigned for error.

It is not negligence *per se* to travel along a public highway by the side of a street railway track on which a car is moving in the same direction as the party traveling, unless such party places himself in such position as to be run over or injured by such street car. The jury were left to infer, however, by the instruction given, that if the injury was occasioned by the plaintiff riding along the railroad track when the car was in motion, he could not recover. The question of negligence was one of fact for the jury to determine from the testimony, and the effect of the instruction was practically to withdraw that question from the jury. The court, therefore, erred in giving the same.

The plaintiff asked the court to give the following instruction: "The court further instructs the jury that it was the duty and incumbent upon the driver of the defendant's car to stand on the front platform, with the lines from the horses drawing the car in his hands, and to exercise a reasonable degree of care and watchfulness to prevent all collisions and injury to persons crossing and traveling on and over said street. And if you believe from the evidence that the injury in this case was caused by the want of the driver remaining on the front platform, ceasing to have and hold the lines in a careful manner, his failure to watch carefully or in any manner use reasonable care to prevent the injury, and that for any of said reasons the injury occurred, then the defendants are liable, and you will find for the plaintiff and assess the damage at such sum as from all the evidence you believe he has sustained, unless you further find from the evidence plaintiff might by the exercise of ordinary care have avoided the consequences of defendant's negligence," which the court refused, to which the plaintiff excepted.

This instruction should have been given. It is the duty of the driver of a street car to sit or stand on the front

platform, or such place as may be provided for him, with the lines of the horses drawing the car in his hands, and to exercise a reasonable degree of care and watchfulness to prevent collisions or injury to persons traveling on said street. A street is a public thoroughfare where all may pass and repass at pleasure, each having due respect for the rights and safety of others. There is testimony from which the jury would have been warranted in finding that the driver was not at his post of duty when the accident occurred, that he was inside of the car, and upon observing the accident rushed out and endeavored to stop the car, when, had he been at his post, he could have done so before the car passed over the plaintiff. While a street railway company has a right to operate its lines of railway in the streets of a city, and to have precedence over other vehicles on its right of way, yet these rights must be exercised with due regard to the rights of others, and not in such a manner as wantonly or negligently to cause injury to persons lawfully crossing or traveling on said street.

The judgment of the court below having been for the defendant, it follows that such judgment must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.