HENRY N. TENNIS, *as Administrator of the Estate of John S. Tennis, deceased*, v: THE INTER-STATE CONSOLIDATED RAPID TRANSIT RAILWAY COMPANY.

1. DECEDENT *Killed by Engine on Railway Track—Demurrer to Evidence.* Where, in an action by an administrator against a railway company for negligently killing his decedent, it appeared that the decedent was passing along the double track of the defendant's road in a westerly direction within the limits of a city, and discovered a train coming toward him, and, to avoid said train, stepped from the track upon which he was walking to the one immediately north, and, before he had taken more than two or three steps, was struck and killed by the engine of a train going west, and the accident did not occur in a public street of the city, and the train was not running at an unusual rate of speed or in violation of any ordinance of the city, and a demurrer was sustained to the evidence by the trial court, *held*, that it was not error.

2. RES GESTÆ—*Declarations.*    Declarations, to be admissible as part of the *res gestæ*, must be contemporaneous with the principal facts which they serve to qualify or explain. (*The State v. Montgomery*, 8 Kas. 351, followed.)

*Error from Wyandotte District Court.*

THE facts are stated in the opinion.

*Sherry & Hughes*, for plaintiff in error.

*Warner, Dean & Hagerman*, and *N. H. Loomis*, for defendant in error.

Opinion by GREEN, C.: This action was brought by Henry N. Tennis, as administrator of the estate of John S. Tennis, deceased, in the district court of Wyandotte county, to recover the sum of $10,000 damages, on account of the alleged negligent killing of the decedent. The record discloses that John S. Tennis was killed under the following circumstances: On the afternoon of August 30, 1887, he was walking on the railroad track of the defendant in a westerly direction, in Kansas City, some two hundred feet from a coal chute, where engines took on coal. At the point in question, there was a double track located upon a fill, the south side of which sloped downward some twenty or thirty feet to a stream called Jersey creek; the other side of the fill was a few feet above the natural surface of the ground. The general direction of the road was east and west, but west of the coal chute some distance the railroad curved toward the north. Just prior to the fatal accident, the decedent was observed walking westward upon the track used for east-bound trains; a west-bound train was standing at the coal chute taking on a supply of fuel; it appears that the deceased was within thirty or forty feet of this train when it was coaling; about the time he reached a point two hundred feet west of the coaling place, an east-bound train came around the curve in front of him; in the meantime, the train which had been standing at the coal chute started westward; to avoid the east-bound train, the deceased stepped from the south to the north track, and had not taken more than two or three steps before he was struck and instantly killed by the train going west. The train was running at the rate of twelve miles an hour.

The road had been in operation something over a month before the accident. It was admitted, upon the trial, that the accident complained of did not occur in a public street of the city, and no claim was made that the rate of speed at which the train in question was running was in violation of any ordinance.

The case came on for trial on the 23d day of March, 1888, before the court and jury, and upon the conclusion of the evidence for the plaintiff, the defendant interposed a demurrer to the evidence, on the ground that no cause of action had been proved, which was sustained by the court; and the plaintiff below brings the case to this court, alleging that the trial court erred in sustaining the demurrer to the evidence, and also in sustaining an objection of the defendant to a question asked one of the witnesses, by the plaintiff, as to what statement the engineer made in regard to the accident.

The first and principal contention of the plaintiff in error is, that the court erred in sustaining the demurrer to the evidence; that where the injury occurred was a sort of thoroughfare, where men, women and children had been in the habit of walking; that the train on the north track was being run at a wanton and reckless rate of speed, and that the decedent was run over and killed without any notice or warning whatever. The defendant in error insists that the testimony of the plaintiff showed that Tennis was a trespasser upon the defendant's right-of-way, and that the negligence of the deceased was the direct cause of his death; that there is nothing in the evidence to show willfulness or wantonness upon the part of the railway company, and that the demurrer was properly sustained.

Was the decedent killed under such circumstances as to indicate that his death resulted from negligence? If so, the demurrer should have been overruled. The law of this jurisdiction has been settled, that a railroad company has the exclusive right to occupy, use and enjoy its railway track, and such exclusive right is absolutely necessary to enable it to properly perform its duties, and any person walking upon a

track of a railway, without the consent of the company, is held in law to be there wrongfully, and, therefore, to be a trespasser; and, in case of an injury happening to such person so trespassing upon it, from the movement or operation of the cars of the company over it, he is without remedy, unless it be proved by affirmative evidence that the injuries resulted from culpable negligence after the deceased was noticed upon the track. (*Mason v. Mo. Pac. Rly. Co.*, 27 Kas. 83.) We do not think the evidence indicated that the public had acquired any right to the railroad track, as a thoroughfare, with the consent of the railway company. The road had been in operation but a short time, and it could hardly be contended that the use of the track had been acquired by prescription. The settled policy of the law is to make the track of a railroad, which is exclusively the roadway of the company, and upon which cars are operated by steam and kindred agencies, clear of all obstruction which might impede the free and exclusive use of the track, for the purpose for which it was constructed. There seems to be sound reason for this policy. It is stated by Mr. Justice Paxson, in the case of *Mulherrin v. D. L. & W. Rld. Co.*, 81 Pa. St. 366:

"We hold these corporations to a strict line of responsibility whenever passengers are injured by accidents to their trains. It follows that we should be equally emphatic as to their control of their tracks. Except at crossings, where the public have a right-of-way, a man who steps his foot upon a railroad track does so at his peril. The company have not only a right-of-way, but such right is exclusive at all times and for all purposes. This is necessary, not only for the proper protection of the company's rights, but also for the safety of the traveling public. It is not right that the lives of hundreds of persons should be placed in peril for the convenience of a single foolhardy man who desires to walk upon the track. In England it is a penal offense for a man to be found unlawfully upon the track of a railroad. It would add materially to the public safety were there a similar law here."

The law would have a different application where a railroad track was laid in a public street; the rights of the pub-

lic and the railroad company, respecting the use of the same, would be mutual. (*L. N. A. & C. Rly. Co. v. Phillips*, 112 Ind. 59.)

It is claimed that the place where the decedent was killed was almost a public thoroughfare, and made so by people passing up and down the track, and that it was gross negligence for the defendant to run its trains at such a high rate of speed as to endanger the lives of persons walking upon its road. Admitting that such was the case, still a duty rested upon the decedent to keep a sharp lookout for trains, from both directions. He must have known that trains passed over the road at frequent intervals. He certainly knew of the train at the coal chute, and the direction in which it was going. He could see the condition of the fill in front of him and determine whether it was a safe place to venture or not. The evidence was to the effect that he saw the east-bound train coming around the curve, and stepped from the south to the north track, but a few feet in front of the west-bound train. We think the engineer of this train had the right to assume that the decedent would get off the track in time to avoid danger, and there would not be willfulness in letting his train move on; we think the fact that he did leave one track and pass to the other strengthened the engineer in this assumption, that the man would avoid the danger from the approaching train, and there would be no necessity for his giving any signals or stopping his train.

Again, the evidence clearly indicated that the decedent stepped but a few feet in front of the moving train; that he had taken but two or three steps before the engine struck him. A signal would have been of no avail, and the train could not have been checked in time to prevent the accident. It is now the settled rule in this and other states, where the plaintiff seeks to recover for injuries on the ground of the defendant's negligence, that, if the ordinary negligence of the plaintiff directly or proximately contributed to the injury, he cannot recover, unless the injury was intentionally and wantonly

caused by the defendant. (*U. P. Rly. Co. v. Adams*, 33 Kas. 427, and authorities there cited.)    Whenever persons undertake to use a railroad track as a footway, they are supposed to do so with full knowledge and understanding of its dangers, and they assume the risk of all its perils. (*B. & O. Rld. Co. v. The State*, 62 Md. 479; *McLaren v. I. & V. Rld. Co.*, 8 Am. & Eng. Rld. Cases, 219; *J. M. & I. Rld. Co. v. Goldsmith*, 47 Ind. 43; *Railroad Co. v. Houston*, 95 U. S. 702; *Railroad Co. v. Jones*, 95 id. 442; 1 Thomp. Neg. 453, 459; *Morrisey v. Easton Rld. Co.*, 126 Mass. 377; *Railroad Co. v. Monday*, 49 Ark. 262; *Williams v. S. P. Rld. Co.*, 72 Cal. 120; *Railroad v. Hummell*, 44 Pa. St. 378.)

In a recent case decided by the supreme court of California, where the decedent, while walking along a railroad track without license, was run into and killed a distance of one hundred and fifty yards from a crossing behind him, from which direction the train was coming, the engine was in a reversed position, and there was no headlight or cow-catcher on the tender; the bell was not rung nor was the whistle blown at the crossing, though provided for by statute.    Had such signals been given, decedent would probably have heard them and escaped injury; he was not seen by the engineer until after the accident.    It was held that the decedent was a mere trespasser, to whom the company owed no duty, and, therefore, it is not liable. (*Toomey v. S. P. Rld. Co.*, 27 Pac. Rep. 1074.)

The rule has been stated by Judge Cooley, in his book on Torts, p. 660:

"The general duty of a railway company to run its trains with care becomes a particular duty to no one until he is in a position to have a right to complain of the neglect; the tramp who steals a ride cannot insist that it is a duty to him; neither can he, when he makes a highway of the railway track and is injured by the train."

It was held in Iowa that a railroad company did not owe to trespassers upon its track such care that an engineer was re-

**1. Demurrer to evidence; no error in sustaining.** quired to look out for them, but after discovering them, it would be negligence not to use every means to avoid inflicting injury. (*Masser v. Rld. Co*, 68 Iowa, 602.) We think, under the facts in this case and the great weight of authorities, the demurrer to the evidence was properly sustained.

It is next contended that the court erred in sustaining an objection to a question asked one of the witnesses for the plaintiff, as to what the engineer said about the accident. The transaction was complete; the train had run a little more than the length of itself and stopped, and was standing some little distance from where the man was struck, and the witness stated that some five minutes after he walked across to the place, and he was asked if he had any conversation with the engineer, which was objected to and sustained. To have made the statement of the engineer admissible, the declaration attempted to be drawn from him must have con-

**2. Declarations, when a part of the res gestæ.** stituted a part of the *res gestæ;* that is, the statement must have been connected with and part of the transaction in question. Any statement the engineer might have made would have been concerning a past and completed transaction, and hence, would have been incompetent evidence against the railway company to prove the manner and cause of the decedent's death. The fact that the statement was made in five minutes after the accident would not render the evidence admissible, if the conversation referred to a past occurrence, and not connected with the *res gestæ.* "There must be concurrence in point of time between the act and the declaration; otherwise, it is but a narrative of what has been, or an assertion of what will be done." (*The State v. Montgomery*, 8 Kas. 351; *Swenson v. Aultman*, 14 id. 273; *The State v. Pomeroy*, 25 id. 350; *Jenkins v. Levis*, 25 id. 479; *U. P. Rly. Co. v. Fray*, 35 id. 700; *Dodge v. Childs*, 38 id. 529.)

We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.