## STREET RAILROAD CO. *v.* HOWARD.

### (*Jackson.* May 18, 1899.)

1. SUPREME COURT. *Will not set verdict aside, when.*

   This Court will not set aside a verdict for plaintiff for want of evidence to support it, when the plaintiff's testimony on the trial makes out a case, although it is impeached by his statement on a former trial that did not make out his case. The question presented was one of credibility of the witness, not of sufficiency of evidence, and therefore peculiarly a matter for the jury. (*Post, pp. 476, 477.*)

2. EVIDENCE. *Res gestœ.*

   The statement of a street car motorman, "that he saw plaintiff and thought he would get off the track," made fifteen minutes after the collision that resulted in plaintiff's injury, at the place of the collision, but after plaintiff had been extricated from the car wheels and his wounds washed, is not admissible as part of the *res gestœ.* (*Post, pp. 477, 483.*)

   Cases cited and approved: Denton *v.* State, 1 Swan, 278: Diwiddie *v.* Railroad, 9 Lea, 309; 144 Mass., 148; 51 N. Y., 295; 53 Mich., 322; 74 Mo., 553; 119 U. S., 99; 45 Kan., 503.

3. STREET RAILWAY COMPANIES. *Rights to use of track.*

   The rule that at crossings a street railway company has, in the operation of its cars, no preferential right of way over vehicles and pedestrians, has no application to the operation of its cars over that portion of its track between crossings, where, under the law, it has a superior, though not exclusive, right of way. (*Post, pp. 483–485.*)

   Case cited and approved: Citizens' Rapid Transit Co. *v.* Segrist, 96 Tenn., 123.

---

#### FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby County. L. H. ESTES, J.

TURLEY & WRIGHT for Railroad Co.

JAS. M. GREER for Howard.

McALISTER J. Howard commenced this suit in the Circuit Court of Shelby County against defendant company to recover damages for personal injuries. The case has been tried several times. The first trial resulted in a verdict for the plaintiff for $1,000; the second ended in a mistrial; the third and last resulted in a verdict and judgment against the defendant for $3,250. A new trial having been refused, the company appealed and has assigned errors.

The plaintiff resided in the State of Mississippi, and, at the time of the accident, had stopped over in the city of Memphis while *en route* to visit his parents. That night, between 8 and 9 o'clock, plaintiff, accompanied by a friend, started to visit some ladies who lived on Marley Avenue, in the suburbs of Memphis. Plaintiff admits taking several glasses of beer prior to his departure, but claims he was not intoxicated. He and his friend boarded a Johnson Avenue car, operated by defendant company, and when Marley Avenue was reached they separated, Howard remaining on the south side of the street car track while Elliott went off to look for the house they wished to visit. Plaintiff, after waiting some time for Elliott to return, started north on Marley Avenue in search of the house. Plaintiff crossed the track going north at the intersecting

street, and, after an unsuccessful search for the house, returned south again, and, while trying to cross the track of defendant company, he was struck by a car running west and very severely injured.

There is evidence tending to show that the railroad track at this point is laid out in a straight line for nine hundred feet east of Marley Avenue, and that a lighted car can be easily seen that distance. This fact is admitted by plaintiff and is undisputed.

On the first trial the plaintiff testified that when he retraced his steps, failing to find his friend, and walking eight or ten steps on the track, he stopped to look at a house facing the old Raleigh road, and that, just as he stopped, a car came up from his side and rear, striking him and inflicting the personal injuries for which he sues. He further testified on that trial that he could have seen the car approaching for a distance of nine hundred feet, and could have heard it, but, as a matter of fact, he neither saw nor heard a car.

On that trial the plaintiff further testified that just as he stepped into the track, from the north toward the south, he was struck by the car; that he had neither looked nor listened for a car to the east or west, from which directions cars were likely to come, and that he was not thinking about a car at all.

On the last trial the plaintiff testified that before attempting to cross the track he stopped and looked

around, across, and in every direction, and that he did not see a street car coming.

Overruling the motion for new trial on the last verdict, the Court said, viz.: "This case has been tried three times. The first time there was a verdict for $1,000. The Court set the verdict aside because plaintiff's own testimony showed clearly that he did not look or listen for a car. In granting the new trial the Court held the failure to look or listen was such contributory negligence that it ought to defeat plaintiff's right of recovery." The Court then remarked that on this (the last) trial Howard's testimony is much more favorable to his case. He appears to be an honest man, with a purpose to tell the truth, and thereupon the motion for new trial was overruled. The question, then, upon this assignment of error, is whether there is any evidence to support the verdict.

The conflict in the testimony of the plaintiff was a matter that went to his credibility as a witness, and was for the jury. This Court could not adjudge his testimony unworthy of credit and say there was no evidence to sustain the finding of the jury. At last it is a matter for the settlement of the jury upon the irreconcilable statements claimed to have been made.

The second assignment is that the Court erred in admitting declarations made by the motorman after the accident was over. These declarations were admitted upon the theory that they were

part of the *res gestæ.* These declarations are proved by two witnesses who visited the scene of the accident immediately after it occurred. One of the witnesses testified that he was at his home in the neighborhood, about two hundred and forty feet away, and that his attention was first attracted by what he denominates a terrible noise, as if made by the sudden reversal of the car. He went out to his front gate, and was informed that some one had been run over. Witness immediately ran down there and found the plaintiff under the car, the conductor and motorman trying to extricate him. Witness assisted the employes of the road, and the plaintiff was finally removed from the track. Another witness then came up, and he was sent back to his home, one hundred and fifty feet away, for a basin and towel. He returned, and the plaintiff was then washed. After all this had been done, which consumed, probably, fifteen minutes, one of the witnesses asked the motorman how it occurred. The motorman replied that ''he saw plaintiff, but thought he would get off the track.''

The question presented is, whether the statements of the motorman were part of the *res gestæ* or merely narrative of a past occurrence. The true rule on this subject is thus expressed by Mr. Wharton, in his work on Criminal Evidence, Sec. 262, viz.: '' *Res gestæ* are events speaking for themselves through the instinctive words and acts of participants, not the words and acts of participants when

narrating the events.    What is said or done by the
participants under the immediate spur of the trans-
action becomes a part of the transaction, because,
then, it is the transaction that then speaks.    In
such cases it is not necessary to examine as wit-
nesses the persons who are participants in a trans-
action thus instinctively spoken or acted.    The
question is, Is the evidence offered that of the
event speaking through the participants, or that of
the observers speaking about the event?    In the
first case what was thus said can be said without
calling those who said it; in the second case they
must be called.    Nor are there any limits of time
within which the *res gestæ* can arbitrarily be con-
fined.    They vary, in fact, with each particular
case.    A distinguishing feature of declarations of
this class is that they should be the necessary inci-
dents of the litigated act, necessary in this sense,
that they are a part of the immediate concomitants
or conditions of such act, and are not produced by
the calculated policy of the actors.    In other words,
they must stand in immediate causal relation to the
act and become part of the action immediately pro-
ducing it, or which it immediately produces.''
Again, at Sec. 259, Vol. 1, of the same work,
edition 1888, he says: ''The *res gestæ* may, there-
fore, be defined as those circumstances which are
the automatic and undesigned incidents of a particu-
lar litigated act, and which are admissible when
illustrative of the act.    Incidents that are imme-

diately and unconsciously associated with the act, whether such incidents are doings or declarations, become, in this way, evidence of the character of the act. They are admissible, though hearsay, because, in such cases, from the nature of things, it is the act that creates the hearsay, not the hearsay the act. It is the power of perception unmodified by recollection that is appealed to, not of recollection modifying perception. Whenever recollection comes in—whenever there is opportunity for re-. flection and explanation—then statements cease to be parts of the *res gestæ*. Aside from the temptations to the parties, when they have time to collect themselves, to palliate or aggravate, there is a tendency to exaggeration apt to swerve the memory of those who were witnesses of any casualty or collision when they talk about it after it is over. Hence it is important for the interests of truth and justice that the statements of neither parties nor bystanders, made after the event, should be received on trial unless under the responsibility of an oath and with opportunity of cross-examination."

This question has frequently been before this Court. In *Denton* v. *State*, 1 Swan, 278, the facts were that Denton and Sullivan, in the presence of several other persons, quarrelled and fought. They were separated, when Denton threw a chair at Sullivan, but no one saw it strike him. Sullivan was thrust out of the house. In twenty-five or thirty

minutes he returned to the room, and complaining of being sick, was put to bed. On being interrogated as to the cause of his sickness (Denton not being present), he replied that "Denton had hit him on the belly with a chair."

·It was held that these statements of Sullivan formed no part of the *res gestæ*, but were mere hearsay and inadmissible as evidence. It was said in that case that declarations, in order to be part of the *res gestæ*, must be contemporaneous with the principal transaction of which they form a part.

"This principle of law is founded upon the clearest dictate of reason. The declarations were evidence, because they are a part of the thing doing. If, therefore, the thing shall have been done and concluded, declarations then made are not evidence."

The Court further remarked: "That the scuffle between the parties had ended twenty-five or thirty minutes before these declarations were made, and that the principal transaction had so completely ended as that these statements cannot be connected with it as part thereof, and they are mere hearsay and not evidence."

In *Diwiddie, Admr.*, v. *L. & N. R. R.*, 9 Lea, 309, it appeared that after deceased had been run over, the train was stopped, and the engineer, conductor, and other train hands, gathered around the body, which was still breathing. It was held that statements made around the body by operatives of

. 18 P—31

the train as to how the killing occurred were inadmissible.

Booth on Railroads thus lays down the law on this subject: "In an action to recover damages for personal injuries, the declarations of a servant of the defendant are not admissible against it as a part of the *res gestæ*, unless it appears affirmatively, before such declarations are admitted, that they were made at the time the injuries were inflicted. This principle applies to acts as well as to declarations, and to all cases alike. If the declaration offered in evidence was not an actual part of the transaction on account of which the plaintiff seeks damages, it is inadmissible, although made at the place of the accident in the presence of those who witnessed it, and immediately after it occurred. In such cases time is a very important, although not always the controlling, element in determining the question of competency. But in each case such declarations must be excluded if they do not tend to give character to a contemporaneous act, and are merely narrative, however nearly connected in time they may be with the main fact in controversy." See also *Wilson* v. *Railroad Co.*, 144 Mass., 148; *Whittaker* v. *Street Ry. Co.*, 51 N. Y., 295; *Johnson* v. *Ice Co.*, 53 Mich., 322; *Adams* v. *Railroad Co.*, 74 Mo., 553; *Railroad Co.* v. *O'Brien*, 119 U. S., 99; 45 Kan., 503; 19 L. R. A., 733.

We are of opinion the Circuit Judge was clearly in error in admitting the statements of the motor-

man under the circumstances stated, and this assignment of error is sustained.

The Court also erred in charging the jury, as follows: "The conduct of the motorman (Sparrow) and of plaintiff (Howard) must be measured by exactly the same rule. To vary the rule in the least in favor of either one, is to violate your oath. They both were using the street; their rights to use the street were exactly the same."

This error is intensified by the failure of the Court to give special instruction No. 3, which is as follows: "The defendant had the superior right of way, although not the exclusive right of way, of that portion of the highway occupied by its tracks, which are used or about to be used, by the transit of cars between street crossings—that is, between blocks, while the traveler has the right to use the street car tracks when not occupied, or about to be occupied, by the cars, but it is the traveler's duty to give the right of way to the cars upon their approach and not impede their progress."

The well-established rule is that street railroads have the superior, though not the exclusive, right of way between street crossings, and all the evidence in this case places Howard between street crossings when injured.

The doctrine contended for in this special instruction was approved by this Court in the case of *Citizens' Rapid Transit Co.* v. *Segrist*, 12 Pickle, 123, where the Court uses this language: "In his late

work on Street Railways, at Section 304, Booth says: 'As already stated, as a general rule, especially between street crossings, cars have a right of way superior to other vehicles and pedestrians. This preferential right must be exercised in a reasonable and prudent manner. But this rule does not apply to crossings, or street intersections; here neither has a superior right to the other; the right of either must be exercised with due regard to the right of the other.' "

In Section 303 Booth on Street Railroads states the law as follows: "A reconsideration of the grounds of the earlier decisions, aided by time and experience, has resulted in establishing a rule, now well-nigh universal, that a street car has, and from the necessities of the case must have, the right of way upon that part of the street upon which alone it can travel paramount to that of ordinary vehicles, but that this superior right does not prevent others from driving along or across its tracks, at any place or time, when by doing so they will not interfere with the progress of the cars. In this case the better right is not an exclusive right, but, being paramount to the extent stated, it will be enforced against all who needlessly oppose obstacles to its exercise. Other travelers, therefore, must yield the right of way. Therefore the driver of a private vehicle may cross the tracks, and this right is not confined to occasions when other portions of the street are crowded or obstructed, and may drive

Street Railroad Co. *v.* Howard.

along and upon the tracks, if he uses due diligence not to interfere with the passage of the cars." *Sherman* v. *Street Ry.*, 44 Cal., 418; *Street R. R.* v. *Ingram*, 131 Ill., 659; *Hearn* v. *Street Ry.*, 34 La., 160; *State* v. *Foley*, 31 Ia., 527; *Commonwealth* v. *Hicks*, 7 Allen, 573; *Rascher* v. *Street Ry.*, 51 N. W. Rep., 463 (Mich.); *Brooks* v. *Street Ry.*, 22 Neb., 816; 49 N. J. Law, 468; 126 N. Y., 625; *Adolph* v. *Street Ry.*, 76 N. Y., 530; 24 Atlantic, 596 (Pa.); 141 Pa. State, 615.

It will be observed that throughout the charge the Court, time and again, tells the jury, in effect, that the rights of both parties between street crossings were equal. It is true he does state that the same degree of care, to be on the lookout for pedestrians between crossings, as at crossings, is not required of motormen, nor are they to use the same degree of speed between crossings as at crossings; but· this instruction is wholly apart from the rule that between street crossings the company has a preferential right, which principle was not recognized by the Court, but a wholly different doctrine announced. For the reasons indicated, the judgment is reversed and the cause remanded.