TENNESSEE CENTRAL RAILWAY COMPANY v. MRS. MAY E. GLEAVES, Admx.

Middle Section. January 29, 1926.

Certiorari denied by Supreme Court, May 22, 1926.

1. **Evidence. Narrative statement may be admitted as res gestae.**
    The mere fact that the statement is in narrative form will not exclude it if it was actually a part of the res gestae.

2. **Evidence. Admissibility of evidence as res gestae dependent on particular facts of each case.**
    It is not possible to define with precision what is, and what is not, part of the res gestae, and it must be left in a great measure to the discretion of the trial court in each particular case.

3. **Evidence. Rule as to admissibility of declarations as part of res gestae, stated.**
    Declarations in order to be admitted as a part of the res gestae, must be contemporaneous with the principal transaction of which they are a part. The declarations are evidence because they are a part of the thing doing. If therefore, the thing shall have been done and concluded, declarations then made are not evidence.

4. **Evidence. Statement of engineer in response to a question after accident held not admissible as res gestae.**
    In an action for wrongful killing by defendant railroad when after party had been hit and train had stopped and backed up some four hundred feet and engineer had alighted and walked back to the mail car, his reply to question of mail clerk, that he had hit someone, held not admissible as res gestae.

5. **Appeal and error. Erroneous admission of statement of engineer where there was no other direct testimony, held reversible error.**
    In an action against a railroad company for a wrongful killing where all of the evidence was circumstantial except the statement of the engineer that he hit a man which was erroneously admitted held the admission was reversible error.

6. **Evidence. Expert testimony. The questions asked an expert must fairly state the case.**
    It is sufficient if the question fairly states such facts as the proof fairly tends to establish, and fairly presents the claim or theory of the party offering it, and a question should not be rejected because it does not include all the facts, unless it thereby fails to present the case fairly.

7. **Trial. Instructions. Instruction on expert testimony held too broad.**

In action against a railroad for wrongful killing an instruction on expert testimony held the first paragraph properly instructed the jury but the second paragraph invaded the province of the jury and the instruction was properly refused.

8. **Trial. Instructions. Whole instructions must be considered to determine error.**

If when the whole instruction is read together it is clear in its meaning the instruction will not be held bad because one clause is not clear when read alone.

9. **Trial. Instructions. Defendant is entitled to an instruction telling the jury it is not necessary for it to put on witnesses even though they are in court room.**

In an action against a railroad for wrongful killing where defendant elected to stand on evidence of plaintiff and did not offer any of its witnesses though they were in the court room, held it was entitled to an instruction that it was under no duty to offer evidence.

10. **Trial. Instructions. Where only obstruction was a human being it was not error to refuse instruction on size of obstruction.**

In an action against a railroad for wrongful killing where there was no evidence of any other obstruction than the body of deceased held the refusal of an instruction that the jury might consider the size of the obstruction was not error.

11. **Trial. Instructions. Instruction on a theory not borne out by evidence is properly refused.**

A party is not entitled to an instruction on a theory that is possible but is not borne out by the evidence.

Appeal in Error from Circuit Court, Davidson County; Hon. A. B. Neil, Judge.

Reversed and remanded.

Roberts & Roberts, of Nashville, for plaintiff in error.

John B. Daniel, Bond, Fuqua & Bond, of Nashville, for defendant in error.

DeWITT, J. This was an action for damages brought by Mrs. May E. Gleaves, Administratrix of the estate of her son, Frank D. Gleaves, deceased, for the alleged wrongful killing of said Frank D. Gleaves by a passenger train of plaintiff in error on September 27, 1923. The jury rendered a verdict in favor of the plaintiff below for $10,000. The trial judge suggested a remittitur of $3,500, which was accepted by the defendant in error under protest; whereupon judgment was rendered in her favor for $6,500 and costs of suit. From this judgment the defendant below has appealed in the nature of a writ of error and has assigned numerous errors. For convenience the parties will be referred to in this opinion as plaintiff and defendant as they stood in the circuit court.

The action was predicated upon an alleged violation of section 1574, sub-section 4 of Shannon's Code, which is as follows:

"Every railroad company shall keep the engineer, fireman,

or some other person upon the locomotive, always upon the lookout ahead, and when any person, animal or other obstruction appears upon the road, the alarm and whistle shall be sounded, the brakes put down and every possible means employed to stop the train and prevent the accident.''

It was averred in the declaration that because of the defendant's failure to comply with this statute, enacted for the prevention of accidents and for the protection of human life, Frank D. Gleaves was run into and knocked a considerable distance and killed by defendant's train.

The first assignment is that the court erred in admitting the testimony of the witness, Percy Carver, the railway postal clerk on the defendant's passenger train on the night of the alleged killing of the deceased, to the effect that after the train stopped and after the engineer had alighted from his engine and was going back by the side of his car walking along on the ground, the witness asked the engineer what had happened, and the engineer said in reply that he had hit a man at the crossing; and that the court erred in refusing the special request offered by defendant's counsel that the jury be charged that said testimony of witness Carver as to what the engineer told him was incompetent and so withdrawn from their consideration.    It is insisted that this testimony was hearsay only and not a part of the res gestae because it was not voluntary and spontaneous but was in response to a question by the witness Carver.

The place of the occurrence is at Hermitage Station, a flag station on defendant's railway about eleven miles from the city of Nashville.    The passenger train of defendant was going toward Nashville.    It came around a curve through a cut the western point of which, going toward Nashville, is three hundred and sixty feet from the crossing of a public road and seven hundred and sixty feet from the place where the train stopped.    The body of the deceased was found lying seven or eight feet north of the track and eight or ten feet west of the public road, which was about thirty feet wide.    About fifteen to twenty minutes before the train arrived the deceased had been seen by one witness sitting on the north end of a cross-tie, just east of the crossing, facing north, and smoking a cigarette.    From the point of the curve to where the deceased was sitting, the track is straight.    The train was running somewhere between twenty and twenty-five miles an hour when it approached the station.    No one who testified saw the train hit the deceased. The proof of the fact that the deceased was an obstruction on the track and that the train hit him rests upon circumstantial evidence unless this statement of the engineer is admissible.    The distance from where the deceased was sitting on the cross-tie and where the train stopped is about four hundred and forty feet.    When the

train had gone this distance it came to a stop, then it was backed to a point opposite where the body of the deceased lay, about four hundred and sixteen feet. When it stopped, the engineer stepped off the engine, walked the length of the tender and the mail car and met the witness, Carver, the mail clerk, as he stepped off the mail car. There the conversation in question took place.

In Jones on Evidence, section 345, it is said that among the more modern cases it will be found that conversations after accidents are frequently tendered as part of the res gestae, and cases are cited as giving excellent illustrations of their rejection on the ground of narrative; and it is also said that the mere fact that the statement is in narrative form will not exclude it if it was actually a part of the res gestae.

In Kennedy v. Railway Company, 2 Tenn. C. C. A., 103, cases are reviewed holding as part of the res gestae and admissible, statements made by injured persons just after the accident occurred; the court held that statements made by the plaintiff's intestate after he was struck by a train were not admissible because it did not appear how soon after the accident or how closely connected therewith the statements were made; in other words, that it did not appear that they were a part of the res gestae.

The rule in Tennessee laid down in Denton v. State, 1 Swan, 278, is as follows:

"It is certainly true, as stated by Mr. Greenleaf, that it is not possible to define with precision what is, and what is not part of the res gestae, and that it must be left in a great measure to the discretion of the court in each particular case. Nevertheless, it is clearly laid down that declarations, in order to be evidence as part of the res gestae, must be contemporaneous with the principal transaction of which they are part. 1 Greenleaf on Evidence, secs. 108, 111. This principle of law is founded upon the clearest dictate of reason. The declarations are evidence, because they are part of the thing doing. If, therefore, the thing shall have been done and concluded, declarations then made are not evidence."

This strict rule has been constantly adhered to in Tennessee, whether the declarations were self-serving or were in the nature of admissions.

In Dinwiddie v. Railroad, 9 Lea, 309, it appeared that immediately after the deceased had been run over, the train was stopped and the engineer, conductor, and other train hands had gathered around the body, which was still breathing; that a witness was asked what statements were made around the body by the operatives of the train as to how the killing occurred? The Supreme Court, in holding that this question was incompetent, said:

"We think it requires neither argument or authority to show

that there is no error in this.  It is not shown what statement
the plaintiff proposed to prove and besides it would have been
but the declarations of persons not parties to the cause, as
to facts which they were competent witnesses to prove, but as
to which they could make no admission binding upon the de-
fendant.''

In Street Railroad Company v. Howard, 102 Tenn., 474, it was
held that a statement of a motorman operating the car which struck
the plaintiff, that he saw the plaintiff and that he thought he would
get off the track, made fifteen minutes after the collision, at the
place of the collision, but after the plaintiff had been extricated
from the car wheels and his wounds washed, was held not to be ad-
missible as part of the res gestae.

In Travis v. L. & N. R. R. Co., 9 Lea, 231, testimony as to a state-
ment by an engineer two or three hours after the accident, that he
did not see the plaintiff until he was struck by the locomotive, was
held inadmissible as a part of the res gestae or as an admission or
declaration by the defendant.

. In Street Railroad Co. v. Howard, supra, the court quoted ap-
provingly from Wharton on Criminal Evidence, sec. 262, as follows:

''Res gestae are events speaking for themselves through the
instinctive words and acts of participants, not the words and
acts of participants when narrating the events.  What is said
or done by the participants under the immediate spur of the
transaction becomes a part of the transaction, because, then, it
is the transaction that then speaks.  In such cases it is not nec-
essary to examine as witnesses the persons who are participants
in a transaction thus instinctively spoken or acted.  The ques-
tion is, Is the evidence offered that of the event speaking
through the participants, or that of the observers speaking
about the event?  In the first case what was thus said can be
said without calling those who said it; in the second case they
must be called.  Nor are there any limits of time within which
the res gestae can arbitrarily be confined.  They vary, in fact,
with each particular case.  A distinguishing feature of dec-
larations of this case is that they should be the necessary in-
cidents of the litigated act, necessary in this sense, that they
are a part of the immediate concomitant or conditions of such
act, and are not produced by the calculated policy of the ac-
tors.  In other words, they must stand in immediate causal
relation to the act and become part of the action immediately
producing it, or which it immediately produces.''

The court again quoted from section 259 of the same work as
follows:

''The res gestae may, therefore, be defined as those circum-
stances which are the automatic and undesigned incidents

of a particular litigated act, and which are admissible when illustrative of the act."

The court quoted approvingly from Booth on Railroads as follows:

"In an action to recover damages for personal injuries, the declarations of a servant of the defendant are not admissible against it as a part of the res gestae, unless it appears affirmatively, before such declarations are admitted, that they were made at the time the injuries were inflicted. This principle applies to acts as well as to declarations, and to all cases alike. If the declaration offered in evidence was not an actual part of the transaction on account of which the plaintiff seeks damages, it is inadmissible, although made at the place of the accident in the presence of those who witnessed it, and immediately after it occurred. In such cases time is a very important, although not always the controlling, element in determining the question of competency. But in each case such declarations must be excluded if they do not tend to give character to a contemporaneous act, and are merely narrative, however nearly connected in time they may be with the main fact in controversy." See Wilson v. Railroad Co., 144 Mass., 148; Whittaker v. Street Ry. Co., 51 N. Y., 295; Johnson v. Ice, Co., 53 Mich., 322; Adams v. Railroad Co., 74 Mo., 553; Railroad Co. v. O'Brien, 119 U. S., 99; 45 Kan., 503; 19 L. R. A., 733.

In Irvine v. State, 104 Tenn., 132, 56 S. W., 845, it was said that the declaration must be so connected with the act as to make the two constitute one and the same transaction, so that the declaration becomes the articulate voice of the act.

In Frank v. Wright, 140 Tenn., 546, the declaration of a chauffeur employed by the defendant, to the effect that he was on a mission for his employer while he was driving the automobile which struck a boy, made ten or fifteen minutes after the accident, was not a part of the res gestae and was inadmissible.

While it is true that the trial judge has some discretion in determining the admissibility of such evidence, we are of the opinion that it was clearly error to admit the testimony, under the rules which have been so consistently adhered to in Tennessee. Necessarily some time had elapsed. The train in the process of slowing down to a quick stop had gone about four hundred and forty feet. It then backed something over four hundred feet. The engineer had walked a short distance. His statement was neither voluntary nor spontaneous but was made in response to a question, It was a narrative of an act completed, not the act describing itself in the statement. In our opinion the statement was not a part of the res gestae. Manifestly the admission of this testimony must have affected the result of the trial. It is insisted for the plaintiff that if this was error it was harmless because there is abundant

other evidence to sustain the verdict of the jury; but the vital question was whether or not the deceased was an obstruction upon the track. Without this evidence the issue could only be determined upon circumstantial evidence. We are unable to conclude that the jury would not then have had a serious doubt as to the deceased being an obstruction upon the track. The admission of this testimony at once must have determined this question in the minds of the jury. Until it is shown that the deceased was an obstruction upon the track at the time of the accident the action predicated upon the statute could not be maintained. The burden is upon the plaintiff to show that the deceased appeared upon the track in front of the train or so near to it as to be an obstruction, and until this was done there was not made out such a prima-facie case as would place the burden upon the defendant of showing that it had observed the requirements of sub-section 4 of section 1574 of Shannon's Code. C. N. O. & T. P. Railway Co. v. Brock, 132 Tenn., 447; C. N. O. & T. P. Railway Co. v. Wright, 133 Tenn., 80.

A theory cannot be said to be established by circumstantial evidence, either in a civil or criminal case, unless the facts and circumstances shown are not only consistent with such theory but are absolutely inconsistent with any other rational theory. 10 R. C. L., p. 1007.

The defendant introduced no testimony. The plaintiff's witnesses show that deceased, a man in good health, of good eyesight and hearing, about forty years of age, lived in the neighborhood of Hermitage Station. He was employed as an air-brake inspector in the Nashville Terminal yards. On the evening in question he went to the Hermitage Station to board this train to go to Nashville, as he worked at night. During the previous two days he was hauling logs and had not slept during that time. The station is a flag station. The flag is usually placed as a signal for the train to stop at a point one hundred and thirty feet from the western point of the curve. The flag was not placed there on that evening. The engineer blew the whistle when the mail car, just in the rear of the tender, was rounding the curve. The brakes were applied and evidently when the engineer saw that the flag was not there the brakes were released. Then several short signals were given by blowing the whistle, they being the usual signals for warning persons or animals on or near the track. A sudden effort was made to stop the train, resulting in much noise. The train then slowed down until it was stopped where a trestle formerly stood four hundred and sixteen feet from the crossing of the road. About fifteen or twenty minutes before the train came one witness passed over the crossing in an automobile going south to his home in the neighborhood. He saw the deceased sitting on the north end of a crosstie about twelve feet from where he was going along the road. The

back of the deceased was to the north rail. The deceased and the witness spoke to each other. The deceased was smoking a cigarette. Witness estimated that from that time it was fifteen to twenty minutes before he heard the train whistle as it was going to the station. The next day another witness saw footmarks and stubs of cigarettes just north of the end of the cross-tie about where the deceased had been seen sitting. There were bloody stains on the road crossing leading to the pool of blood where the body lay. The wounds on the body were under the right shoulder and on the back of the head. While this evidence tended to show that the deceased was struck while sitting on the cross-tie, or within striking distance of the engine, the jury might have been unable to conclude that this was true. Therefore, we think that the error in admitting the testimony as to the statement of the engineer was too vital to enable us to hold that it was harmless error. The first assignment of error is sustained.

The second assignment of error is that the court erred in admitting over objection the testimony of the witness Snedden that a railroad train running twenty miles an hour can be stopped in a distance of one hundred feet. This witness had had twenty-eight years of experience as a railroad engineer. Prior to February 10, 1910, he had served for some time as an engineer in the employment of the predecessor of the defendant. The objection to this testimony is because the question propounded assumed that the train was running on a level track; and because other facts assumed in the question were outside the proof and the question did not embody substantially all the facts relating to the particular matter as to which an expert opinion was sought to be elicited. The witness testified that if the brakes were in good condition and the track and other conditions were ordinary in character, a train with an engine and three or four cars running on practically level ground at the rate of twenty miles an hour could be stopped in one hundred feet. It is insisted that the question should have described more particularly this passenger train, what kind of an engine it had, how many cars, how heavily loaded they were, what kind of brakes the cars had, whether the track was level or up-grade or down-grade. Of course, these are material features, but counsel could have developed this on cross-examination.

In Woodward v. Insurance Co., 104 Tenn., 54, it was said that the value of experts testimony depends upon the agreement or non-agreement of the supposed case with the actual facts of the particular case; that mere opinions cannot prevail over actual facts. But this rule relates to the value not the admissibility of such testimony. The universal rule is that it is sufficient if the question fairly states such facts as the proof fairly tends to establish, and fairly presents the claim or theory of the party offering it; that a question

should not be rejected because it does not include all the facts, unless it thereby fails to present the case fairly. Jones on Evidence, section 371.

There is testimony that this track was practically level and other testimony that it was a slight down-grade. The jury heard this testimony and could thus determine whether or not the question fairly dealt with the facts.

In Wigmore on Evidence, section 681, it is said that it is proper to leave it to the discretion of the trial judge to allow the question when it does fair justice. We cannot say that the trial judge abused his discretion in admitting this testimony, although the facts presented to the witness were somewhat meager.

In this connection we will consider the ninth assignment of error, to the effect that the court erred in declining the request of the defendant to instruct the jury as follows:

"It is competent for a party to offer what is known as expert testimony, for instance, as to the distance in which a train can be stopped; but such testimony should be scrutinized closely, and carefully weighed. Its value consists in the experience and professional knowledge of the expert, his interest or prejudice, if any is shown, and in the similarity of the facts and circumstances assumed on which he bases his testimony to the facts of the case.

The witness Snedden was offered by plaintiff as an expert; unless the facts in the case are shown correctly in the hypothesis, as to the number of cars in the train at the time, the weight of the load (whether the train was loader or empty), the grade of the track at the point (whether the train was moving up-grade or down-grade), the speed of the train at the time (whether fast or slow), the condition of the track, and all other factors or elements which would necessarily enter into the question as to the distance it would take to stop a train, then, in the absence or presence of such factors in the hypothesis, the opinion of the alleged expert would be of slight or much weight, the exact weight, if any, to be determined by you."

We are of the opinion that the defendant was entitled to have the first paragraph given in instruction to the jury, in view of the meagerness of the facts presented in the hypothetical question, and in view of the fact that the witness was a discharged employee of the predecessor of the defendant. The instruction offered was sound and inasmuch as this testimony bore most vitally upon the question of defendant's compliance with the statute, the jury should have received these words of explanation and caution. But we think that the second paragraph was somewhat argumentative and tended to invade the province of the jury. As a whole, the in-

struction thus offered went too far and was not erroneously refused.

The sixth assignment of error is that the court erred in charging the jury as follows:

"Now, the first question for you to determine is, did the deceased, Frank D. Gleaves, appear upon defendant's road at or near Hermitage Station in front of the train, or so near as to be an obstruction. If he did, and the preponderance of all the evidence shows he did, then it became the duty of the agents and servants in charge of defendant's train to sound the alarm whistle, put down the brakes and use every possible means to stop the train and prevent an accident."

It is insisted that the clause "and the preponderance of all the evidence shows he did," was an expression of opinion upon the facts and an invasion of the province of the jury. It is manifest that the trial judge did not intend to convey such meaning to the jury. He had instructed the jury that it was their exclusive duty to weigh the evidence and to find the facts. A fair construction of this clause is by connecting it with the preceding clause so that they mean, "if he did, and if the preponderance of all the evidence shows that he did." In other words, the second clause as well as the first is conditional. The meaning attached to the second clause by the defendant would only grow out of some oral emphasis which we see no reason to presume that the trial judge did not give to it. This assignment is overruled.

The seventh assignment of error is that the court erred in refusing to instruct the jury upon request of defendant that the defendant was not required by law to offer the evidence of witnesses, though such witnesses be present in court; but the defendant might rely upon the failure of plaintiff to make out her case, might also rely upon the affirmative proof in plaintiff's proof in support of the theory of defendant, and such proof from the mouths of plaintiff's witnesses might be relied upon by defendant to support its theory of the case; that the plaintiff had it within her power to offer the testimony of the operatives of the train and the fact that they were not introduced by either party is not a violation of any legal duty of the parties to this clause."

The court did instruct the jury as follows:

"Where the defendant does not introduce any witnesses, as in this case, but claims that the plaintiff's evidence fails to show a failure to observe the statute, you will look to all the evidence and determine from the plaintiff's evidence whether or not the defendant, Railway Company, complied with said statute at the time of the accident and whether or not she has made out her case under the evidence and the law as given in charge by the court."

This instruction embodied in substance such of the instruction requested as the defendant was entitled to have given to the jury. This assignment is overruled.

The eighth assignment of error is that the court erred in refusing to instruct the jury upon request of defendant as follows:

"It is your duty to consider the nature, position, and size of an obstruction, and the opportunity of seeing it by the lookout on the locomotive, that is whether it was dark or not, in determining where or at what point the lookout should have blown the whistle and complied with the other statutory precautions."

The only obstruction in question was a human being. The nature and size of a human being as an obstruction would necessarily be in the mind of the jury. The position of the man, if he was an obstruction is left purely to the inference from circumstantial evidence. The distance from the curve to the place of the alleged accident was shown and it was in evidence that it was dark. All of this was clearly before the jury. While there was nothing unsound in the instruction requested, the refusal to adopt it was not reversible error.

The tenth assignment of error goes to the incompetency of the testimony of the witness, Carver, as to the declaration of the engineer. The court was requested to instruct the jury that this testimony was incompetent and so withdrawn from consideration. As we have held that this testimony was incompetent although it was not necessary to request the court to give this instruction, the assignment of error is sustained.

The eleventh assignment of error is that the court erred in refusing to instruct the jury upon request of the defendant as follows:

"If you should believe from a preponderance of the proof that deceased undertook to board the train as it passed the crossing in order to ride to Nashville, and that in so doing he was killed, then in that event, under this declaration, the plaintiff cannot recover, and your verdict would be for defendant."

Under the testimony such a theory as to the cause of the casualty is left to mere conjecture. The record is so devoid of evidence applicable to such a theory, that it was not error for the trial judge to refuse this request.

The twelfth assignment of error presents again the matters already presented and disposed of in the first, second and tenth assignments.

The third assignment of error is that the court erred in refusing upon motion to direct the jury to return a verdict for the defendant. The fourth assignment of error is that there is no material credible evidence to sustain the verdict of the jury.

The facts of this case have already been set forth. We are of the opinion that with the elimination of the testimony as to the dec-

larations of the engineer, there would nevertheless have been sufficient evidence to warrant the submission of the case to the jury. These assignments are, therefore, overruled. For the errors heretofore set forth the judgment of the circuit court is reversed, the verdict set aside and the cause remanded for a new trial. The costs of this appeal will be adjudged against the plaintiff.

Faw, P. J. and Crownover, J., concur.