Roy Garrison *v.* The State.

(*Jackson,* April Term, 1931.)

Opinion filed July 18, 1931.

110

PIERCE & FRY, A. M. MILES and C. C. GRASSHAM, for plaintiff in error.

W. F. BARRY, JR., Assistant Attorney-General, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This appeal is from a conviction of murder in the second degree. The deceased, Sam Boyett, a deputy sheriff, fifty-two years of age, was shot and killed late on an afternoon in July, 1930, at Mason Hall, a small village in Obion County, where he lived. The killing grew out of and followed an altercation between the deceased and John Garrison, a man sixty-two years of age, the father of plaintiff in error. Plaintiff in error came on the scene during the altercation between the two older men, the deceased being the younger, heavier and stronger of the two, heard some words exchanged and saw one or more blows with the hand passed. Earlier on the same day another son of John Garrison had been arrested at Union City by other officers and taken to the jail at Dyersburg. John Garrison had learned, or suspected, that the deceased had given information which led to the arrest, and it appears that the deceased was approached by the father in a spirit of angry protest or complaint. The evidence indicates that John Garrison slapped the deceased, whose attention was thereupon diverted to plaintiff in error, standing a few steps away with a pistol drawn and presented. He started toward plaintiff in error and as they came together the pistol was fired, the ball entering the head near the left temple with instantly fatal effect. The facts thus far stated are undisputed. It is also established beyond doubt that plaintiff in error is a man of exceptionally high character, a lawyer of excellent standing, of Paducah, Ky., where he has resided for some years, with a wife and young son nine years of age. His father, John Garrison, appears to be a farmer, residing a mile or more from Mason Hall. There is no suggestion that either the father or this son had ever before been involved in any difficulties, or that their reputations for peace and order were other than good.

On the trial, the theory of the defense seems to have been threefold, (1) self-defense, in that the deceased had drawn and was approaching with an open knife, (2) defense of his father, in that the deceased was threatening to cut him with the knife, and (3) accident, in that, the pistol was discharged unintentionally when plaintiff in error was scuffling with and seeking only to strike the deceased with the pistol. Two of these matters of defense are predicated on the claim of the defense, strongly disputed by the State, that the deceased had an open knife. The accident theory rests on another sharply disputed claim,—that a tussle took place between the men over the pistol. It is evident that the jury rejected these claims of the defense, and accepted the State's contention that the deceased had no knife except in his pocket, and was shot upon reaching the defendant while approaching him unarmed for the probable purpose of disarming him.

Other issues bearing directly on the question of malice, and largely determinative thereof, were sharply controverted. However, in the view we have felt constrained to take of the action of the trial Court in passing on the admissibility of certain evidence, we find it unnecessary to determine here these disputed issues of fact.

The verdict of murder, rather than voluntary manslaughter, may be sustained only on a finding of malice. The theory of the State in support of malice, aside from the rebuttable legal presumption arising from the killing with a deadly weapon, was that plaintiff in error, along with his father, had become aggrieved and enraged at the deceased because of the part which he had taken as an officer in apprehending and bringing about the arrest earlier in the day of the brother, who was at the time escorting the young son of plaintiff in error

from the home of John Garrison, near Mason Hall, to his home in Paducah, and that plaintiff in error had followed his father to meet and rebuke, or avenge themselves on, the deceased. We find no direct evidence in the record that plaintiff in error had acquired any information of the deceased's part in this matter. He had been informed of his brother's arrest, and accompanied by his wife had driven over from his home in Paducah to the home of his father for the purpose, being a lawyer, of rendering his brother assistance in making bond, or otherwise. He expected to find his young son at his father's home, and learned when he arrived there that the boy had been started on the bus for Paducah that morning, in company with the brother, who had been intercepted and placed in jail. The record shows that plaintiff in error at once, and naturally, became much interested in the whereabouts of his young son, and attempted by various telephone calls to locate him. He appears to have met his father at the Garrison home and knew of his leaving for Mason Hall. And he and his wife did soon follow his father to that place, where he shortly appeared on the scene of the altercation between his father and the deceased, with the fatal result already described. He had lived as a boy in this neighborhood and was acquainted with the deceased, but there is no evidence whatever in the record of any previous illwill or unfriendly relation or feeling between him and the deceased. We, therefore, find the preponderance of the evidence clearly against the theory relied on by the State to show malice. This leaves the record without evidence of malice, except such as is shown by the possession, use and manner of use of the weapon. His explanation of his possession of the pistol, not altogether satisfactory, is that he was carrying it in

his car pursuant to a custom on long trips, with night driving, and that he had taken it from the car and placed it on his person when he got out of the car at his father's home, apprehensive that his small boy, who he thought was there, might otherwise find it in the car and toy with it,—and that in his excitement over the missing boy, whom he had been unable to locate, he had forgotten to place it again in the car pocket.

Now conceding, but not deciding, that self-defense is not established by a preponderance of the evidence, that is, that the deceased did not carry an open knife when, a larger man, he advanced on plaintiff in error, any substantial evidence in rebuttal of malice became exceedingly material as bearing on the degree of the offense, whether murder or manslaughter.

In this situation the defense sought to prove exclamations taking the form of declarations of intent and motive, made by plaintiff in error on the scene immediately following the act.

J. S. Marsh was an eye witness of the shooting who testified for the defendant. He was some eighty feet distant. Immediately on the happening he walked towards the spot and met plaintiff in error who was approaching him. Each man had moved some forty feet, or a dozen steps. Before the Court, without the jury, he testified in substance that as they met, ''Roy asked me if I saw it, and I told him I did. He said, 'I wouldn't have killed Sam Boyett for anything. I struck at him to knock him off. He tried to cut me and got entangled in some way with the pistol and it went off,' and I said 'Yes, Roy, I thought you started to hit him,' and he says 'did you see the knife?', and I said, 'No, Roy, I didn't see the knife.' ''

The refusal of the trial judge to permit this to go to the jury is assigned and strongly urged as reversible error. No reason was stated by the Court for the exclusion, but counsel assume that it was either because regarded as not a part of the *res gestae,* or as cumulative. Witness Skinner, for the State, who had walked some fifty feet to the spot after the killing, had testified in substance that, "Roy says 'I had to do it. He was trying to cut my father. I said 'where is the knife?', and we all three looked on the ground for it and in his hands for the knife and we couldn't find any knife. After we couldn't find the knife Roy said 'I didn't intend to kill him, I struck at him and the gun went off.' "

The record fails to show definitely which of these witnesses, Marsh or Skinner, first reached and heard the statements of plaintiff in error.

The objection because cumulative is not well taken. It will be borne in mind that the offered testimony tended (1) to support the claim of an accidental killing, and (2) to disprove malice. The statement of Skinner may be equally strong as to the accidental theory, but it does not equally disprove malice. To Marsh only plaintiff in error used the significant words, "I wouldn't have killed Sam Boyett for anything." This was an exclamation of regret inconsistent with malice. When coupled with the unusual showing affirmatively made by numerous witnesses of the highest standing of a character on the part of plaintiff in error wholly inconsistent with malice, it had strong probative value. Moreover, it will be observed that not only did the Skinner testimony contain no expression of regret, showing the mental state of the plaintiff in error as to malice, but it tended to prejudice plaintiff in error, in that Skinner testifies that it was only after

they had searched thoroughly for the knife and failed to find it that plaintiff in error said, "I did not intend to kill him, I struck at him and the gun went off." This statement as quoted and placed by the witness might well have been received by the jury as self serving.

Was the Marsh testimony admissible as a part of the *res gestae?*

■ The application of this rule of evidence is oftentimes not free from difficulty. The decision in each case turns largely on the particular facts and conditions of that case. Neither time measured in minutes, nor space in feet, are determinative, although either may be important. Certain settled general principles are thus well stated in 16 C. J., p. 573: "To be admissible as part of the *res gestae* the act or declaration must be substantially contemporaneous with the main fact, must spontaneously spring out of it, must tend to illustrate, elucidate, or characterize it . . . must not in effect be a mere narrative of a past occurrence. However, the word 'contemporaneous' as employed in the rule, is not to be taken in its strict meaning, nor is time the only criterion for determining whether a thing said or done is part of a given transaction, although closeness in point of time is an element for consideration; the ultimate test is spontaneity and logical relation to the main event, and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstance and at a time so near it as to preclude the idea of deliberation and fabrication, it is to be regarded as contemporaneous within the rule."

We are cited to no case holding declarations made under the precise circumstances here shown inadmissible as not part of the *res gestae*. The latest expression of

this Court dealing with this doctrine in a criminal case is in the opinion of Special Justice SMITH in *Templeton* v. *State*, 146 Tenn., at page 281. Testimony of a witness to the effect that the defendant had told him, as they got out into the road, when they had left the house after the tragedy, how long after not appearing, that he did not intend to shoot the deceased, the defense being that the killing was accidental, was held inadmissible as not part of the *res gestae*. On the other hand, in *Irvine* v. *State*, 104 Tenn., 134, statements of the defendants made when starting to travel some miles to the scene of the killing, tending to disprove a felonious motive and intent, were held to be admissible on the theory that they were a part of the movement. Pronouncements in that opinion of the principles governing the rule are in harmony with the above quotation from Corpus Juris. And so, in *Sawyer* v. *State*, 83 Tenn., 694, declarations by a defendant, made while going to and coming from the place of the difficulty, were held admissible as explanatory. In holding incompetent, as not a part of the *res gestae*, a statement of a chauffeur that he was on his master's business when driving a car, Mr. Justice WILLIAMS, in *Frank* v. *Wright*, 140 Tenn., page 546, not only called attention to the lapse of ten or fifteen minutes since the accident, and change in scene, but emphasized that his statement was not voluntary, or spontaneous, but was called out by a question put to him. We regard this as important. Spontaneity is a controlling test. And it will be observed that the declaration of plaintiff in error, as offered to be testified to in the instant case, was not subject to this criticism. Also, in *Street Railroad Co.* v. *Howard*, 102 Tenn., 474, the declarations of the motorman which were excluded were subject to the same objections as in *Frank*

v. *Wright, supra,* having been made some fifteen minutes after the accident and in response to interrogations addressed to him as to how it happened. And in *Denton* v. *State,* 1 Swan., 278, the excluded statements were made some twenty-five or thirty minutes after the affray, at a different place and upon interrogation.

We cannot undertake to review the numerous cases from other jurisdictions discussing this rule of evidence, some admitting and others rejecting the testimony as to statements made at or closely following the time of the act, and on or adjacent to the scene. Consistent with the general statements of the rule hereinbefore set forth, certain particularly pertinent propositions appear to be approved. For example, and as bearing on the largely controlling question of spontaneity, as opposed to considered and manufactured declarations in interest, exclusion is properly applied more strictly to statements made by a defendant on trial for an offense. The element of inducement is more apparent.

Again, a distinction not clearly drawn, but sound in principle, is recognized between statements indicative of the mental attitude at the time of the defendant toward the deceased and the act, and those descriptive of the act itself. This distinction is recognized and learnedly discussed in the leading case of *Traveler's Insurance Company* v. *Mosley,* 8 Wall., 397, 19 L. Ed., 437. Justices CLIFFORD and NELSON dissented in that case, but they concurred with the majority that when the bodily or mental feelings of a party are material the natural expressions of such feelings made at the time are admissible for that purpose, their insistence being, however, that they are not admissible to prove the facts and character of the past act.

In the case at bar this distinction is pertinent in this: According to witness Marsh the defendant, walking a few steps toward him, immediately after the shooting, and while yet in full view of and close to the fallen deceased, said ''I wouldn't have killed Sam Boyett for anything.'' He said more, according to the witness, and while the remainder of his statement may properly be classed as declaratory or explanatory of the act, descriptive of how it occurred, whether accidental, or self-defense, or not, the expression quoted is one of regret clearly indicative of the ''mental feelings'' of the defendant at the time, and strongly suggestive of the lack of malice.

In *State* v. *Martin,* 94 S. C., 92, the Court approved the admission of a conversation between the witness and the defendant in a homicide case, had between five and ten minutes after shooting another, as part of the *res gestae.* Said the Court: ''The language and behavior of the defendant, at the time of the shooting, or immediately afterwards, showing his attitude of aggression or of regret, clearly tended to enlighten the jury on the issue, as to whether the shooting was done with malice, or in heat and passion, or in self defense.''

The Court of Appeals of Kentucky in *Clem* v. *Commonwealth,* 198 Ky., 486, held admissible, as within the rule, a statement made by the defendant after he fired the shots to parties who heard, but did not see the shooting, and who came on the scene ''a very short time'' after he fired the shots, and he ''would not have done it for anything in the world.'' Here again was an expression of regret admissible to rebut malice, if for no other reason.

Now, giving application to this distinction, the Court is of opinion that that portion of the testimony of Marsh which narrated the foregoing exclamation of regret was within the rule, and admissible as clearly tending to enlighten the jury on the issue, in grave doubt under the proof, of whether or not plaintiff in error was actuated by malice. While rejecting so much of the testimony as purported to give statements of plaintiff in error which were descriptive of the occurrence, and therefore perhaps more narrative than exclamatory, the court might well have admitted this exclamation of regret, having all the appearance of being spontaneous and sincere, as a part of the *res gestae.*

This view is supported by the rule that where the competency of evidence is doubtful, it should go to the jury, who may determine its weight. *Montross* v. *State,* 72 Ga., 217, 53 Am. Rep., 838. In the case cited, statements of an injured party who had died, made after the lapse of half an hour, and after removal from the scene, were held admissible as a part of the *res gestae,* on the ground of the bodily and mental condition of the injured party, which precluded in all probability the theory that the statements made had been other than spontaneous expressions.

But, however this may be, this Court is of opinion that the discretion of the trial judge should have been exercised in favor of the admission of this exclamation of plaintiff in error on another ground. As already shown the State had introduced testimony of witness Skinner, who, the record shows, was some fifty feet from the scene of the killing at the time and with his back turned, so engaged that he neither saw nor heard any of the altercation, his attention being first attracted by

the shot, after which he walked over to the scene of the killing and there had the interview, the substance of which we have heretofore stated. As already suggested, the testimony of witness Skinner omits any exclamation or declaration of regret on the part of the plaintiff in error, and parts of it were in some respects prejudicial to him. The Court is of opinion that this testimony of Skinner, narrating statements made by plaintiff in error on the scene immediately after the shooting, having been allowed to go to the jury, the testimony of witness Marsh for the defense, in further explanation of what was said, and particularly in so far as it contained the exclamation of regret so pertinent to the issue of malice, should have been allowed to go to the jury also.

In *Thomas* v. *State,* 121 Tenn., 83, this Court, speaking through Mr. Justice BEARD, while holding as inadmissible as part of the *res gestae* a statement of the deceased made the day after the difficulty which had resulted in homicide, cited numerous authorities for the rule, which this Court approved, that "if a party opens the door for the admission of incompetent evidence, he is in no plight to complain that his adversary followed through the door thus opened; and this, although no objection was made in the first instance to the admission of such evidence." This rule is laid down by Mr. Wigmore in his work on Evidence, Vol. 1, Sec. 15. Our later cases of *Larus* v. *Bank & Trust Co.,* 149 Tenn., 126, and *McCormick* v. *State,* 135 Tenn., 218, cite and approve the opinion in *Thomas* v. *State.* *McCandless* v. *Commonwealth,* 170 Ky., 301, was a homicide case in which the Court not only held competent a declaration made by the defendant shortly after the shooting to the effect that he was compelled to shoot because the deceased was at-

tempting to draw a deadly weapon upon him, but the exclusion of this testimony was held reversible error on the further ground that the State had offered testimony of a portion of the statements made by the defendant on the scene and following the shooting. The Court gave application to the rule approved in *Thomas* v. *State,* and cited additional authorities.

On the grounds stated the case must be reversed and remanded for a new trial. Other assignments do not present reversible error and such complaints as are made thereby will no doubt be met on another trial. Since the case must be reversed for a new trial discussion has been omitted in this opinion of many details of fact, and no opinion expressed as to numerous controverted issues.

DISSENTING OPINION.

MR. JUSTICE SWIGGART delivered the dissenting opinion.

With deference to the views of my associates, I cannot concur in the opinion holding the trial judge in error in his exclusion of the testimony of the witness Marsh. I think the excluded testimony contains only a self-serving declaration of the plaintiff in error, incompetent for any purpose when objected to by the State.

I concur in the reversal because I do not think the evidence sustains a conviction for a higher grade of unlawful homicide than voluntary manslaughter. The verdict of the jury excludes the idea that plaintiff in error came to the scene of the homicide with any preconceived or premeditated intention to harm the deceased, and the evidence of the State tends to show that he drew his pistol when he suddenly came upon his aged father and the deceased, a younger and stronger man, engaged in an altercation. The shot was fired only after the deceased had turned his attention to plaintiff in error, and while

deceased was about to engage in a physical struggle with plaintiff in error for the possession of the pistol, if, in fact, such struggle had not begun. This is the trend of the evidence of the State, and while it is my desire and intention to express no opinion on the claim of lawful self-defense, it is my opinion that if the homicide was unlawful, it was committed in passion, produced by adequate provocation, and manslaughter would measure the grade of the offense. For this reason I think the plaintiff in error entitled to a reversal and a new trial.