**STATE of Tennessee, Appellee,**

v.

**Leon D. MEADOWS, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 10, 1982.

---

J. Andrew Hoyal, II, Asst. Atty. Gen., Nashville, John M. Roberts, Dist. Atty. Gen., Livingston, Marsha Selecman, Asst. Dist. Atty. Gen., Crossville, for appellee.

James E. Thompson, Larry Warner, Crossville, for appellant.

## OPINION

DAUGHTREY, Judge.

The appellant-defendant, Leon D. Meadows, Jr., was convicted of armed robbery and received a sentence of fifteen years and one day in the penitentiary. The most serious issue raised on appeal concerns the admissibility of the robbery victim's accusatory statement, made to police over an hour after the offense occurred, in which the victim identified the defendant as his assailant. Also challenged are the validity of an amendment to the indictment made three days prior to trial, and the propriety of a comment by the prosecution concerning the defendant's failure to call a witness at trial. We find no reversible error in connection with these issues, and we therefore sustain the conviction.

The proof at trial showed that at about 9:00 P.M. on the night of December 5, 1979, Mr. Basil Flynn, the elderly victim in this case, was lying on a bed in his small apartment located on the outskirts of Crossville, Tennessee. A man Flynn later identified as the defendant came into the apartment carrying a cue stick and, after a brief conversation with Flynn, began beating the victim with the stick. Meadows continued hitting Flynn until Flynn lost consciousness.

During this time, a second man came into the room and wrenched a gun out of Flynn's hand, breaking Flynn's finger as he did so. The two intruders took this gun and another one with them when they left the apartment.

The victim regained consciousness after a period of time he estimated to be approximately an hour. He telephoned a neighbor for help; she came to Flynn's home immediately and then went to fetch Flynn's brother, who lived less than a mile away. The police were also notified and arrived on the scene within 15 minutes or so after Flynn regained consciousness. When asked about the °exact time sequence involved, Flynn responded that he was in pain at the time and was "too sick to even know" how much time had elapsed between the robbery and the arrival of police officers. Nevertheless, Flynn said that he told Deputy Sheriff Kenneth Turner that Leon Meadows was the one who had robbed and beaten him. Flynn also testified that he had later identified the defendant from a group of photographs and he made an in-court identification of Meadows.

There was no objection to Flynn's testimony. However, the defendant did object on hearsay grounds to Deputy Turner's testimony that Flynn had told him at the scene that his assailant was "a Meadows boy," and also to testimony by the victim's neighbor and his brother that they overheard Flynn make such a statement to Turner.

The two witnesses who came to Flynn's aid and Deputy Turner all testified that Flynn was still bleeding and in great pain at the time he made the statement in question. Their testimony is corroborated by medical evidence concerning Flynn's physical condition and by photographs which vividly depict his injuries. The orthopedic surgeon who treated Flynn described him as "acutely ill" and "bruised almost beyond recognition" at the time of his hospital admission at 10:58 P.M. on December 5. Flynn's face, neck, arm and chest wall were "swollen out" by large hematomas; his left eye was swollen shut; he was suffering from lacerations of the mouth and fore-

head; and he had sustained fractures of his left forearm, shoulder blade, nose, several of his ribs, and his right index finger. The doctor noted that the rib fractures were particularly serious because they complicated a severe case of chronic pulmonary disease. Flynn remained in the hospital for eight days.

At trial, the defendant objected to the introduction of Turner's testimony regarding Flynn's accusatory statement, on the ground that it came too long after the event to be considered spontaneous. In his brief on appeal, the defendant relies on the case of *Wakefield v. State,* 175 Tenn. 111, 132 S.W.2d 217 (1939), for the proposition that an interval of five minutes or more between an event and a subsequent statement precludes the possibility of proving the spontaneity required to bring the statement within the excited utterance exception to the hearsay rule. The State in reply cites *White v. State,* 497 S.W.2d 751, 753 (Tenn.Cr.App.1973), in which this court upheld the admissibility of a statement made an hour after an assault on a witness who was no longer available at the time of trial.

The cases dealing with accusatory statements made by a victim after the crime has occurred cannot be easily categorized or reconciled. *See* citations collected in Annot., 4 A.L.R.3d 149 (1965). In some jurisdictions, accusatory statements made an hour or more after the event have been held admissible. *See, e.g., Guthrie v. United States,* 207 F.2d 19 (D.C.Cir.1953), involving a lapse of at least eleven hours. Other jurisdictions seem to follow a more narrow view, disallowing statements made within moments after the offense.

■ At one time Tennessee would have been considered among those adhering to the narrow rule, as evidenced by the earliest Tennessee case on this point, which turned more on a "verbal acts" analysis * than on the issue of spontaneity. *See Denton v. State,* 31 Tenn. (1 Swan) 279, 281 (1851), holding that:

[D]eclarations, in order to be evidence as part of the res gestae, must be contemporaneous with the principal transaction *of which they are part....* The declarations are evidence, because they are *part of the thing doing.* If, therefore, the thing shall have been done and concluded, declarations then made are not evidence. (Emphasis added.)

This rather restrictive approach was followed in the 1899 opinion of *Citizens State R. R. Co. v. Howard,* 102 Tenn. 474, 52 S.W. 864, 865 (1899), in which the court noted that the term "res gestae" applies to a thing said or done "under the immediate spur of the transaction [that] becomes part of the transaction..." Some twenty years later, however, the Tennessee court had begun to talk more in terms of spontaneity, noting in *Frank v. Wright,* 140 Tenn. 535, 205 S.W. 434, 436 (Tenn.1918), that a post-event statement should have been disallowed because "[r]etrospection and deliberation were not excluded as factors that may have inspired the words in reply," as well as the fact that "[t]hose words were not part of a transaction then depending." And by 1931, our Supreme Court, while still referring to "res gestae" (the thing done) rather than "excited utterances," had recognized that in determining admissibility of such hearsay statements, "[n]either time measured in minutes, nor space in feet, are determinative, although either may be important... Spontaneity is a controlling test." *Garrison v. State,* 163 Tenn. 108, 40 S.W.2d 1009, 1011 (1931).

Thus, in *National Life and Accident Ins. Co. v. Follett,* 168 Tenn. 647, 80 S.W.2d 92 (1935), the Court permitted into evidence an explanatory statement by the insured to his wife made a few minutes and a short distance away from the event, under circumstances showing that he was in pain at the time that he made the statement. The court, building on the analysis expressed in *Garrison,* said:

---

* True "verbal acts" are non-hearsay. *See* E. Cleary, McCormick on Evidence § 249 (2d ed. 1972).

It is quite generally held that statements of one injured made a few minutes after the accident, and while the defendant is suffering such pain and is under such excitement as to preclude any reasonable possibility of fabrication, are, as as rule, admissible as part of the res gestae. *National Life and Accident Ins. Co. v. Follett, supra,* 80 S.W.2d at 99. In an opinion four years after *Follett,* the Court reiterated, however, that "[a] statement of one of the parties to an affray made subsequent in time is always rejected where it is a mere narrative of past occurrence and when circumstances fail to preclude the idea of deliberation or fabrication." *Wakefield v. State,* 175 Tenn. 111, 132 S.W.2d 217, 219 (1939).

▪ The facts in *Wakefield* fail to indicate whether the subsequently deceased homicide victim was in pain at the time he made the statement in question (which, among other things, contained an accusation that Wakefield had shot the victim some five minutes earlier). The *Wakefield* court was apparently more concerned that the statement was elicited, noting that it was "not voluntary or spontaneous, but was called out by a question." *Id.* Later Tennessee authority makes it clear, however, that such elicitation of the statement, while a factor to be considered, does not control the admissibility of the reply. *Management Services v. Hellman,* 40 Tenn.App. 127, 289 S.W.2d 711, 719 (1955).

The effect of pain on the deliberative processes was considered in *White v. State, supra,* 497 S.W.2d at 753. There the court upheld the admissibility of an accusatory statement, narrative in form, made an hour after an assault, but while the victim was "in shock and still suffering from the effects of the assault."

▪ Although there are no Tennessee cases directly on point, courts in other jurisdictions faced with evidence of an unconscious declarant have held that an accusatory statement made immediately upon regaining consciousness may be admissible as an excited utterance despite the lapse of time involved. *See, e.g., People v. Costa,* 40 Cal.2d 160, 252 P.2d 1, 6 (1953); *Pennington v. Commonwealth,* 294 Ky. 266, 171 S.W.2d 432, 434 (1943); *Vargas v. State,* 107 Tex. Cr.R. 666, 298 S.W. 591, 592 (1927). This approach is consistent with the rule of spontaneity as it has evolved in Tennessee, and we think it should be applied here. Thus, most of the lapse of time between the assault on Basil Flynn and his report to Ken Turner must be disregarded in determining the admissibility of that statement, because the proof shows that Flynn was incapable of deliberation or fabrication during the period of his unconsciousness.

▪ As for the remaining fifteen minute period prior to Flynn's declaration to Deputy Turner, the record shows conclusively that Flynn was in such pain and shock as to effectively preclude the use of deliberative processes necessary to invent an accusation of the nature he made to Turner. Based on the reasoning of *Follett, supra,* and *White, supra,* we hold that there was virtually no opportunity for conscious fabrication under these facts and that Flynn's statement was therefore sufficiently spontaneous to come within the excited utterances exception to the hearsay rule.

▪ The only other requirement for admissibility under this exception is that the event in question be sufficiently startling to create the excitement necessary to ensure the trustworthiness of the related declaration. *See generally* D. Paine, Tennessee Law of Evidence §§ 66–67 (1974). There can be no dispute as to the startling nature of the event in this case. We therefore conclude that the trial court did not err in admitting the testimony of Deputy Turner and others who witnessed Basil Flynn's post-event statement.

Moreover, their testimony was, in a sense, merely corroborative of Flynn's because he himself testified at trial concerning the statement to Turner in which he identified the defendant as his assailant. Such prior extrajudicial statements of identification, made by a witness available for cross-examination at trial, have been held by this court to be admissible as independent evidence of

identity, as well as to corroborate an in-court identification. *Echols v. State*, 517 S.W.2d 18, 22 (Tenn.Cr.App.1974). Thus, even if the trial court had erred in admitting the statement in question, the prejudice to the defendant would have been minimal, as compared to the situation in which the victim is no longer available to testify. *See, e.g., Garrison v. State, supra; Wakefield v. State, supra; White v. State, supra.*

■ The defendant has failed to show prejudice arising from the amendment of the indictment. Having previously filed a request for notice of alibi under Tennessee Rule of Criminal Procedure 12.1(a), the District Attorney notified defense counsel on November 18, 1980, that he would seek to have the indictment changed to recite that the robbery occurred on December 5, 1979, rather than December 4, as originally alleged. Defense counsel responded that he intended to defend on the basis of alibi, but that he had not yet had an opportunity to talk to his client about his alibi defense or to interview potential alibi witnesses. When the case was announced for trial three days later, defense counsel objected to the State's motion to amend. The trial court granted the motion and then ordered a three day continuance to alleviate any hardship on defense counsel that might have resulted from the amendment. When the case was finally tried on November 24, the defendant produced two witnesses and his own testimony in an attempt to establish an alibi for the evening of December 5. Under these circumstances, we find no proof of prejudice resulting from the amendment allowed by the trial court.

■ One of the potential alibi witnesses listed by the defendant in his Rule 12.1(a) notice was not called to testify at trial. The prosecution commented on the defendant's failure to call this witness, who was available at trial and had actually been implicated in the robbery by the victim's testimony. The defendant then moved for a mistrial, claiming a violation of Rule 16(b)(3), which provides that "the mere fact that a witness's name is on a list furnished under this rule shall not be grounds for comment upon a failure to call a witness." As the State correctly points out, Rule 12.1 does not carry a limitation paralleling that contained in the general discovery provisions of Rule 16. Given the circumstances of the brief comment in this case, as well as the obvious materiality of the witness in question, we decline to extend the provisions of Rule 16(b)(3) to cover the witness in question. Moreover, in light of the facts in the record, we cannot say that the comment was unduly prejudicial or that it deprived the defendant of a fair trial.

The judgment of the trial court is affirmed.

BYERS and CORNELIUS, JJ., concur.