IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 12, 2016

## STATE OF TENNESSEE v. YTOCKIE FULLER aka YTEIKIE WASHINGTON

**Appeal from the Circuit Court for Madison County**
**No. 14399    Roy B. Morgan, Jr., Judge**
_____

**No. W2015-00965-CCA-R3-CD  -  Filed November 15, 2016**
_____

The defendant, Ytockie Fuller aka Yteikie Washington, was convicted of first degree murder, Tenn. Code Ann. § 39-13-202, and possession of a firearm after a felony conviction, Tenn. Code Ann. § 39-17-1307(b)(1)(A).  On appeal, the defendant challenges the sufficiency of the evidence supporting the first degree murder conviction arguing that the State failed to prove premeditation.  Additionally, the defendant contends that statements made by the victim in a recorded telephone call prior to his death were inadmissible hearsay and that the State's multiple playing of the recording served to inflame the jury.  After our review, we conclude that the defendant's arguments are without merit.  Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Stephen M. Milam, Lexington, Tennessee, for the appellant, Ytockie Fuller.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jerry Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On March 11, 2014, Aljernon Lloyd, Jr. died after being shot in the face by the defendant in Jackson, Tennessee.  Prior to the shooting, the victim took his companion,

Katherine Dickerson, and her daughter shopping in his car. The three ended the shopping trip at Ms. Dickerson's house in Jackson. Before arriving at the house, the victim received a telephone call from Steve McCorry. Because Mr. McCorry was an inmate with the Illinois Department of Corrections, the phone call was recorded.

Once at home, Ms. Dickerson began unloading the shopping bags while the victim continued his conversation with Mr. McCorry in the car. The defendant soon pulled up to Ms. Dickerson's house in a green Ford Explorer. The defendant briefly interacted with Ms. Dickerson's daughter before telling Ms. Dickerson to take her daughter inside so that he could "holler" at the victim. The defendant and Ms. Dickerson began to argue. She told the defendant that he did not need to speak with the victim. The defendant got angry and told her to "shut the f**k up." Ms. Dickerson responded in kind, and the defendant yelled: "You think I'm something to play with?" By this time, the defendant had pulled out a gun that had been concealed on his hip and was standing by the driver's side door of the victim's car.

The victim was sitting in the driver's seat of his car, unarmed. As the defendant approached him, the victim stopped his conversation with Mr. McCorry. The victim said: "Hold up, this man's got a pistol." The victim tried to explain to the defendant that he was "giving the baby a ride." However, the defendant called the victim a "punk a** n*****" and shot the victim in the face. Ms. Dickerson did not see the defendant pull the trigger, but she did hear the gunshot. The defendant dropped the gun and fled the scene in the green Ford Explorer.

After being shot, the victim drove in the direction to Jackson-Madison County General Hospital which was close to Ms. Dickerson's house. However, he lost control of his car and crashed into a house located less than a mile from the Dickerson residence. The bullet had pierced the victim's right external carotid artery.

The State provided testimony from officers who investigated the scene of the shooting and the scene of the subsequent car accident. At the accident scene, officers found the victim surrounded by blood and slumped over into the passenger's side of the car. However, neither the responding officers nor the paramedics saw any signs of life from the victim at the scene. The victim was transported to Jackson-Madison County General Hospital where he was pronounced dead at 8:21 p.m. on March 11, 2014.

Dr. Erin Carney, an expert forensic pathologist, performed an autopsy of the victim. Dr. Carney testified that the victim died from a gunshot wound of the head and neck. The bullet entered through the left side of the victim's upper lip and exited on the right side of his neck. The trajectory of the bullet was consistent with someone standing over the victim from a distance.

The scene of the shooting, the scene of the car accident, and the victim's car were examined for evidence. Officers found a .40 caliber bullet near Ms. Dickerson's house. A spent shell casing and projectile fragments were found in the victim's car. Eric Warren, a ballistics and firearm identifications expert, testified that the .40 caliber bullet and the shell casing were cycled through the same semi-automatic gun. The defendant's fingerprints were not found on the victim's car.

Officers then turned their search towards the defendant and the green Ford Explorer. They found the Ford Explorer, which was owned by the defendant's girlfriend, in Jackson the day after the shooting. However, the defendant was not found until two days later when he turned himself in to a Jackson city police officer on March 13, 2014.

The defendant testified at trial. He acknowledged the dialogue captured on the McCorry phone call, but stated that he was acting in self-defense at the time of the shooting. The defendant admitted to illegally carrying a .40 caliber Smith & Wesson gun on the day of the shooting and that he knew the victim was unarmed. However, the defendant explained that he only pulled out the gun after the victim hit him with the car. The defendant stated that he feared for his safety and offered the following testimony:

> Once I was struck by the vehicle, when I'm stumbling trying to keep my footing, I poured - - I literally poured out the gun and cocked it. Once he grabbed it from me pointing it in his direction, I grabbed the top of the car and I'm running with the vehicle as he backing back and he panicking [be]cause the gun is on him. So he trying to get it out of my hand, I'm trying to put it back, and I understand that he's scared, but I can't let the gun go now [be]cause he got it and he won't let it go, and we just heading on down the driveway.

According to the defendant, the gun went off when the victim's car hit the bottom of the driveway. The defendant stated he did not intentionally pull the trigger. He dropped the gun at the scene and left in the green Ford Explorer. The defendant further explained that he went home to watch the news to see if the victim had been hurt. He then fled to his sister's home in Nashville, despite knowing the police and U.S. Marshals were looking for him.

The jury convicted the defendant of first degree murder and possession of a firearm after a felony conviction. Tenn. Code Ann. §§ 39-13-202; 39-17-1307(b)(1)(A). The defendant received a life sentence without the possibility of parole for the first degree murder conviction. The trial court imposed an eight-year sentence for the

possession of a firearm after a felony conviction, to be served consecutively to the defendant's life sentence.

On appeal, the defendant argues the victim's statements made in the McCorry phone call are hearsay and should have been excluded from evidence and that the State's use of the McCorry phone call inflamed the jury. The defendant also argues there was insufficient evidence to support the conviction of first degree murder. The defendant does not challenge his conviction for possession of a firearm after a felony conviction on appeal. The State contends the victim's statements from the McCorry phone call were properly admitted into evidence under the excited utterance exception to the hearsay rule. The State asserts the defendant waived any argument regarding the use of the McCorry phone call at trial as it was not properly preserved for appeal. Finally, the State argues the evidence was sufficient to convict the defendant of first degree murder. Upon our review, we agree with the State.

## ANALYSIS

### I. The McCorry Phone Call

The defendant argues the victim's statements in the McCorry phone call are inadmissible as they do not fall under any exceptions to the hearsay rule. Hearsay is "a statement other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Generally, hearsay is not admissible unless an exception applies. Tenn. R. Evid. 802. An excited utterance, or "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," is an admissible exception under the rule. Tenn. R. Evid. 803(2).

In order to determine the admissibility of an alleged excited utterance, courts are to apply a three-part test. First, the court must determine if a startling event or condition occurred. The event "must be 'sufficiently startling to suspend the normal, reflective thought process of the declarant.'" *Kendrick v. State*, 454 S.W.3d 450, 478 (Tenn. 2015), *cert. denied*, 136 S. Ct. 335 (Oct. 13, 2015) (quoting *State v. Gordon*, 952 S.W.2d 817, 820 (Tenn. 1997)). Next, the court must determine whether the alleged statement relates to the startling event. "A statement relates to the startling event when it describes all or part of the event or condition, or deals with the effect or impact of that event or condition." *Id.* (citing *State v. Stout*, 46 S.W.3d 689, 699 (Tenn. 2001)). Finally, the court must find that the statement was made while the declarant was under stress or excitement from the startling event. *Id.* Courts should consider "whether the statement suggests 'spontaneity' and whether the statement has a 'logical relation' to the shocking event." *Id.* (quoting *Gordon*, 952 S.W.2d at 820); *see also State v. Smith*, 857 S.W.2d 1,

-4-

9 (Tenn. 1993); *Garrison v. State*, 40 S.W.2d 1009, 1011 (1931). When a statement meets each prong of the test, it passes muster under the excited utterance exception to the hearsay rule. *Id.*

The three-part test guides this Court's review of the victim's statements in the McCorry phone call. However, the Tennessee Supreme Court recently announced the following standard regarding our review of hearsay evidence on appeal:

> The standard of review for rulings on hearsay evidence has multiple layers. Initially, the trial court must determine whether the statement is hearsay. If the statement is hearsay, the trial court must then determine whether the hearsay statement fits within one of the exceptions. To answer these questions, the trial court may need to receive evidence and hear testimony. When the trial court makes factual findings and credibility determinations in the course of ruling on an evidentiary motion, these factual and credibility findings are binding on a reviewing court unless the evidence in the record preponderates against them. Once the trial court has made its factual findings, the next questions – whether the facts prove that the statement (1) was hearsay and (2) fits under one of the exceptions to the hearsay rule – are questions of law subject to de novo review.

*Id.* at 479.

Here, the facts in the record support the trial court's admittance of the victim's statements in the McCorry phone call under the excited utterance exception to the hearsay rule. Tenn. R. Evid. 803(2). The statements at issue, though not specifically identified by the defendant, occurred as the defendant approached the victim with a gun. The victim, who was on the phone with Mr. McCorry, said, "hold up, this man's got a pistol." The trial court specifically analyzed the victim's statements under the three prongs of the excited utterance test in a motion to suppress hearing held prior to trial. The court explained:

> The [c]ourt finds specifically looking to the totality of the circumstances as has been set forth to the [c]ourt today that this would have been a startling event. The statements relate to the event taking place, resulting in what the [d]efendant's been charged with at this point in time, and the statements were made while the declarant was in an excited state right in the middle of this event occurring, there again, a man showing up with a gun standing in his doorway of the car and having it cocked.

As a result, the trial court held the victim's statements were admissible under the excited utterance exception to the hearsay rule.

The defendant now argues the victim's statements do not constitute excited utterances because the victim was not sufficiently startled when the defendant approached him and pulled out a concealed gun. The defendant claims that the victim was "merely reporting information to the individual with whom he [was] conversing rather than reacting to a startling event or condition." We disagree.

The record makes clear that while the victim was on the phone with Mr. McCorry, the defendant got angry with Ms. Dickerson, cursed at the victim, approached the victim's car, pulled out a concealed gun, and pointed it towards the victim. The victim was sitting in his car, unarmed. These facts establish that a sufficiently startling event occurred. The victim's statements regarding the defendant's possession of a gun relates to the startling event of the defendant approaching him with a gun. Finally, the record makes clear that the victim's statements were made while he was under stress from the defendant's armed approach. The facts in the record surrounding the statements made by the victim in the McCorry phone call meet the requirements of the excited utterance test. Accordingly, the victim's statements were properly admitted into evidence at trial. *See Kendrick*, 454 S.W.3d at 478-79. We affirm the ruling of the trial court.

The defendant also argues that the victim's statements in the McCorry phone call are not statements made under the belief of impending death pursuant to Rule 804(b)(2) of the Tennessee Rules of Evidence. However, the defendant did not address this argument in his motion for new trial. Tenn. R. App. P. 3(e). Further, the trial court specifically ruled that the victim's statements were admitted into evidence as excited utterances under Rule 803(2). Accordingly, the defendant has waived this argument on appeal and it is without merit.

In addition, the defendant contends that the State's use of the McCorry phone call served to inflame the jury because the State played graphic portions of the call twice at trial. The State responds by stating that the defendant has not properly preserved this argument for appeal, that the defendant has not cited any legal authority for this argument, and that the record does not clearly show that the jury heard the "graphic material" a second time. After reviewing the record, we agree with the State. The defendant has waived this issue by not specifically stating it in his motion for a new trial. Tenn. R. App. P. 3(e). The defendant has not offered any legal authority to support this argument. Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authority, or appropriate references to the record will be treated as waived in this court." *See also* Tenn. R. App. P. 27(a)(7). And finally, the record does not adequately show that the jury heard the "graphic material" in the McCorry phone call a second time. This argument is also without merit.

## II. Sufficiency of the Evidence

Finally, the defendant argues the evidence presented at trial is insufficient to support his conviction for first degree murder. When the sufficiency of the evidence is challenged, appellate courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). Appellate courts "do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state." *State v. Adams*, 45 S.W.3d 46, 55 (Tenn. Crim. App. 2000) (citing *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). As a result, "'a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State.'" *State v. Thorpe*, 463 S.W.3d 851, 864 (Tenn. 2015) (quoting *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)).

Further, "[a] jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The Tennessee Supreme Court explained as follows:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (1963)). Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon

direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). The jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). Further, the jury decides "'the extent to which the circumstances are consistent with guilt and inconsistent with innocence.'" *Id.* (quoting *Rice*, 184 S.W.3d at 662). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.* Rather, "conflicts in the testimony are resolved in favor of the verdict of the jury and the judgment of the trial court, and the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *Tuggle*, 639 S.W.2d at 914 (citing *Cabbage*, 571 S.W.2d at 835).

As charged in count one of the indictment, first degree murder is the "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). "'Premeditation' means that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). The Tennessee Supreme Court further defines premeditation, and factors that support a finding of it, as follows:

> The elements of premeditation and deliberation are questions for the jury which may be established by proof of the circumstances surrounding the killing. There are several factors which tend to support the existence of these elements which include: the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime, and calmness immediately after the killing.

*State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997) (internal citations omitted) (citing *State v. Brown*, 836 S.W.2d 530, 541-42 (Tenn. 1992)); *State v. West*, 844 S.W.2d 144, 148 (Tenn. 1992).

The defendant challenges the sufficiency of the evidence supporting his first degree murder conviction by arguing that the State failed to prove premeditation after the defendant testified that he accidentally shot the victim. In support of this argument, the defendant asserts that before he pulled out the concealed gun, the victim hit him with the

victim's car. The defendant testified that after being hit, he pulled out the gun and then he and the victim struggled over the gun. The defendant asserts he "accidentally" pulled the trigger after "the impact of the victim's vehicle [hit] the street from the driveway." Further, the defendant argues that the series of events leading up to the victim's shooting and death are disputable. He states that the defendant "was the only eyewitness to events and the audio recording does not provide sufficient information to nullify the [defendant's] testimony that the shooting was accidental." We disagree.

After a thorough review of the record, we conclude that the evidence presented at trial supports the defendant's conviction for first degree murder. The record shows that the defendant shot the victim in the face and the victim died of a gunshot wound to the head and neck. The audio recording of the McCorry phone call and the corresponding witness testimony outlined the interactions between the victim and the defendant leading to the gunshot. Specifically, the defendant cursed at the victim, approached the unarmed victim sitting in his car, engaged a concealed gun, shot the victim in the face, and then fled the scene. The defendant testified that he acted in self-defense after the victim hit him with his car. However, the jury heard the defendant's testimony regarding the accidental nature of the shooting, weighed it in relation to the other evidence presented at trial, and reconciled all of the evidence in favor of the State. This court will not reweigh the evidence. *Dorantes*, 331 S.W.3d at 379. Accordingly, we conclude that sufficient evidence exists to support the defendant's first degree murder conviction. The judgment of the trial court is affirmed.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE